CHRISTOPHER B. BOUTON

*v.*

A. D. SMITH *et al.*

*Filed at Ottawa March 24, 1885.*

1. CHANCERY—*bill for a discovery—whether other relief may be sought thereby.* A creditor's bill against an insolvent corporation and its officers and stockholders may, in addition to seeking a discovery of assets, properly seek to have certain payments made by the corporation to others of the defendants therein, adjudged fraudulent as to the complainants, in which case it is proper, on a failure as to the discovery, to retain the bill as to the other relief sought.

2. PREFERENCE OF CREDITORS—*whether allowable—of the voluntary payment where a debt is not legally subsisting.* The payment to one stockholder of a private corporation for advances or loans made by him to the corporation, and interest thereon, by the transfer of notes and accounts, is not fraudulent as to other creditors of the corporation. At most it is but a preference of one creditor over others, which the law allows.

3. But the payment by an insolvent corporation to a stockholder, of a demand which is not a legally subsisting debt capable of being enforced by suit, is a mere gift, and fraudulent as to *bona fide* creditors.

4. FRAUD AS TO CREDITORS—*if contract avoided by the creditors, effect as to binding force of stipulations as between the parties to the contract.* Where a stockholder of an insolvent private corporation accepts notes and accounts of the corporation at a certain per cent discount on their face, in payment of a legal debt owing him from the corporation, and also in payment of a large sum for services rendered voluntarily by him for the corporation under no contract for compensation, (which payment as to the latter is fraudulent as to creditors,) while he may not himself avoid the contract, yet if the same is avoided by creditors it will no longer bind him as to the prices at

31—113 ILL.

which he received the notes and accounts, but he will be chargeable with the sums actually received by him on them, and the actual value of the remainder over and above his just demands, or if he will render a full account of the net proceeds of such securities and demands as he has converted into money or disposed of, and turn over the balance to a receiver, he will be required to refund only the excess of the net receipts over and above his just legal claim upon the corporation.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

This was a creditor's bill, filed in the Superior Court of Cook county on July 23, 1880, by A. D. Smith, D. M. Smith, H. D. Smith, Benjamin T. Jennings, R. S. Sutton and Thomas Sutton, composing the firm of Smith, Sutton & Co., of Pittsburg, Pennsylvania, against the Chicago Plow Manufacturing Company, Nathaniel S. Bouton, Christopher B. Bouton, Edward G. Shumway, George H. Hull, as vice-president and treasurer, and George H. Hull individually, S. F. Bouton, as secretary, and S. F. Bouton individually.

The bill avers that on March 13, 1880, the complainants recovered a judgment against the Chicago Plow Manufacturing Company for the sum of $10,392.38, damages, and costs, in the Superior Court of Cook county; that an execution was issued upon said judgment on or about March 29, 1880, and duly returned by the sheriff *nulla bona;* that such judgment was in full force and effect, and was based upon a note made by the Chicago Plow Manufacturing Company, for $9222.58, dated July 5, 1878, and due December 1, 1878, with ten per cent interest after maturity, which note was given in renewal of certain five other promissory notes given by said company for goods, wares and merchandise sold and delivered by complainants to said company between September 1, 1877, and April 1, 1878. This bill was in the ordinary form used for discovery of assets and property, and among other things prayed that the defendants other than the company might

be required to state, under oath, each for himself, jointly or separately, whether or not they have in their possession or under their control certain property, goods, choses in action, or property of any kind or nature, belonging rightfully or equitably to the said defendant the Chicago Plow Manufacturing Company, and if so, that they may be required to disclose the same. The bill also, among other things, charged as follows:

"And your orators further show, on information and belief, and charge the fact to be, that the said defendant the Chicago Plow Manufacturing Company, acting in collusion with several others of the defendants, to-wit, Nathaniel S. Bouton, Christopher B. Bouton, and Edward G. Shumway, (three stockholders or officers of the said defendant the Chicago Plow Manufacturing Company,) has, at divers times since the contraction of said indebtedness to your orators, paid to the said Nathaniel S. Bouton, Christopher B. Bouton and Edward G. Shumway, and other persons, large sums of money, without any good or valid consideration therefor, and that such payments so made as aforesaid were in fraud of your orators, and other creditors' rights in the premises, and that they were so made for the purpose of hindering and delaying your orators and other creditors in the collection of their just debts and claims against the Chicago Plow Manufacturing Company."

The bill prayed for the appointment of a receiver of the company, and for such other relief as the nature of their case required, and as should be agreeable to equity and good conscience. The defendants answered, under oath, denying all the allegations of the bill seeking discovery and charging fraud, and denying the possession of any assets belonging to the company by any of said defendants, or elsewhere. Replications were filed to the answers, and the cause referred to the master to take and report testimony. On the coming in of such report the cause was heard, and a decree for $4725.31 was entered against the appellant, alone. This decree, on

appeal to the Appellate Court, was affirmed, and by further appeal the case is brought to this court.

The evidence shows that the Chicago Plow Manufacturing Company was organized under the general law of this State, April 12, 1877, with a capital stock of $125,000, and immediately commenced business; that the stockholders at the time of the organization were N. S. Bouton, George H. Hull and S. F. Bouton, and E. G. Shumway, George H. Hull and S. F. Bouton were its officers and directors; that appellant was not an officer or director of the company at any time; that he became a stockholder by purchase of E. G. Shumway's stock of one hundred shares, in March, 1878; that appellant was called on for advice and assistance by the officers of the corporation almost daily, and that he aided it in borrowing money, by lending his credit and by pledging his means as collaterals for loans to it; that he, about the 4th of May, 1878, at the request of the corporation, at an auction sale, bought the note of the corporation for it, paying $8000 of his own money for the same, and that about August 1, 1878, he advanced to the company $1338.31 more, making a total of $9338.31 advanced by him in cash. About August 1, 1878, the board of directors voted to appellant $6000 for his total services, in addition to the sum the company owed him for his advances. On account of all this indebtedness he took depreciated notes, bills and accounts of the company, from which he actually realized about the sum of $9000. There is no proof as to the value or the amount of the uncollected notes and accounts.

Messrs. LEAMING & THOMPSON, for the appellant:

The bill being a bill for discovery only, and its allegations having been denied by the answers, the bill should have been dismissed on the filing of the answers. *Insurance Co.* v. *Central National Bank,* 7 Bradw. 426; *Fire Ins. Co.* v. *Central National Bank,* 1 id. 344.

A corporation as well as an individual is liable on an implied promise to pay the value of services rendered, and an actual record of such contract is unnecessary. Angell & Ames on Corp. (11th ed.) secs. 317, 291 a, 237; *Bank of the United States* v. *Dundridge*, 12 Wheat. *64; *Seagraves* v. *City of Alton*, 13 Ill. 336; *Ryan* v. *Dunlap*, 17 id. 40; *Wheeler* v. *City of Chicago*, 24 id. 105; *Maher* v. *City of Chicago*, 38 id. 206.

A stockholder in a corporation does not come within the rule prohibiting the president and directors from receiving or recovering compensation not fixed prior to the rendition of the service to the corporation, when such service comes within the scope or line of their official duties. *Cheeney* v. *Railway Co.* 68 Ill. 571; *Holden* v. *Railway Co.* 71 id. 106.

Mr. R. B. BACON, for the appellees:

A creditor's bill filed pursuant to section 49 of the Chancery act, is a bill for relief as well as discovery. *Fire Ins. Co.* v. *Central National Bank*, 1 Bradw. 357; *Mitchell* v. *Byrns*, 67 Ill. 572.

Officers and directors of a corporation can not claim compensation for services rendered to it within the scope of their duties, without an antecedent vote, resolution or by-law authorizing the same.

The assets of a corporation are a trust fund, charged, primarily, with the payment of the corporate debts, and they may be followed by the creditors into the hands of any person having notice of the trust attached to them. As to the stockholders, there can be no pretence but that they are chargeable with the most ample notice of the trust character of the assets. Morawetz on Private Corp. sec. 574; *Peterson* v. *Land and Loan Co.* 6 Bradw. 257; 2 Story's Eq. Jur. sec. 1252; *Wood* v. *Dummer*, 3 Mason, 308; *Clapp* v. *Peterson*, 104 Ill. 26; *Bartlett* v. *Drew*, 57 N. Y. 587.

If the stockholders of an insolvent corporation meddle with or appropriate the corporate assets, they become, in regard

to said assets, like the directors, *quasi* trustees as to creditors of said corporation, and they can not occupy the *status* of innocent purchasers. *Wood* v. *Dummer,* 3 Mason, 311; Perry on Trusts, sec. 217.

Again, a corporation has no right to give away its property, leaving its creditors unpaid. A transfer of its assets, unless made in the due course of business and for value, will be set aside, and the lien of creditors may be enforced, in equity, until the property has reached the hands of a *bona fide* purchaser for value. Morawetz on Private Corp. sec. 574; *Railroad Co.* v. *Howard,* 7 Wall. 392.

It makes no difference if the directors and the appellant thought the corporation solvent, and acted in good faith. *Bartlett* v. *Drew,* 57 N. Y. 587; *Clapp* v. *Peterson,* 104 Ill. 26.

Mr. Justice Dickey delivered the opinion of the Court:

This was a creditors' bill brought by the appellees, against the Chicago Plow Manufacturing Company and others of its officers and stockholders, under section 49 of the Chancery Code, to compel a discovery, under oath, of any property or thing in action belonging to or due such company, or held in trust for it, and to enjoin any transfer of the same, and for the appointment of a receiver, and for other relief, generally. The defendants other than the debtor corporation answered under oath, averring that the complainants' note upon which its judgment was recovered, was secured by a chattel mortgage executed by the company to Roswell B. Bacon, the agent and attorney of the complainants, on all the machinery and tools of the Chicago Plow Manufacturing Company; that said Bacon took said machinery and tools under said mortgage, and removed and disposed of the same in some manner unknown to the defendants; that neither the complainants nor their agent has ever accounted to the company for the disposition of said property, and that said property was of the

value of $20,000,—much more than enough to satisfy said debt to the complainants; also averring, that on March 3, 1879, Herbert C. Ayer and Henry I. Higgins, a firm, etc., filed their creditors' bill in the Superior Court of Cook county against said company, in which suit a receiver was appointed, to whom the company assigned all its assets, and that on July 21, 1879, the receiver sold such assets under an order of court, which sale was approved by the court, and denying, specifically, the other allegations of the bill.

The first point made is, that the bill was for a discovery, only, and failing as such, it should have been dismissed, and that the court had no jurisdiction to entertain the same for any other purpose. This point would doubtless be good if the bill was for discovery, and that alone. Such is the case where discovery is asked in aid of an action at law. In this case the bill not only seeks a discovery of assets, but in addition thereto it seeks to have a receiver of the defendant corporation appointed, and certain payments made by the corporation to certain others of the defendants adjudged fraudulent as to complainants. No good reason is perceived why this may not be done, and thus obviate the necessity of more than one suit. It sets up fraud as a ground of equitable relief. It charges that the defendant corporation, acting in collusion with the other defendants, has, at divers times since the accruing of said indebtedness to complainants, paid to the said Nathaniel S. Bouton, Christopher B. Bouton, etc., large sums of money, without any good or valid consideration therefor, and that such payments so made as aforesaid were made in fraud of complainants' and other creditors' rights in the premises, and that they were so made for the purpose of hindering and delaying complainants and other creditors in the collection of their just debts, etc. This is certainly sufficient to give the court jurisdiction to determine the matters alleged.

In point of fact, was there any payment or payments made by this corporation to appellant without any valid consideration therefor? The proofs show very clearly that notes and accounts of the corporation to the amount of about $15,000 were transferred to him, and that from such notes and accounts he has collected and realized about $9000 in money. These notes and accounts are claimed to have been paid to him and accepted by him in satisfaction of a previous *bona fide* indebtedness of the corporation to the appellant of over $15,000, consisting of a debt of $9856.46 due for moneys advanced for the company at its request, and interest thereon, and the sum of $6000 allowed him by vote of the directors for past services in behalf of the company. As to the first item of $9856.46, or thereabouts, for moneys advanced by appellant, there was a valid legal obligation resting upon the corporation to pay the same, with interest, which appellant might have enforced by action at law. Any payment upon this, either in money or in notes and accounts, can not be fraudulent as to other creditors. At most, it is but a preference of one creditor over others, which is lawful, and not fraudulent. But the transfer of the notes and accounts to appellant was not made in payment or discharge of his claim for moneys advanced, alone, with interest thereon, but in discharge and satisfaction of his claim and demand of over $15,000, composed of the advances and the salary or compensation of $6000 for his personal services. If this last item was not a valid indebtedness of the company, it had no right to use the corporate funds or assets to pay the same, to the injury of actual *bona fide* creditors. If this demand was not enforcible against the corporation, the payment of the same was a mere gift or donation, and as to real creditors fraudulent and void in law. We can not regard the $6000 voted to be paid the appellant, August 1, 1878, for alleged services rendered for the corporation, as constituting a valid indebtedness, which the corporation was under a legal obli-

gation to pay. We do not think appellant could have maintained an action against the corporation for compensation for such services. There is no evidence of any contract or agreement whatever for the performance by appellant of any services for this corporation, much less for paying him anything therefor. We fail to find any contract binding appellant to perform any services for the company. Doubtless the records of the company show what compensation was to be paid to the officers and employes of the company, but they disclose no entry in respect to the employment or payment of appellant, except the vote in August, 1878, allowing him $6000. It will not do to allow either the officers or stockholders of a private corporation organized for pecuniary profit, after incurring a large indebtedness, and while actually insolvent, by vote to set apart moneys or corporate property to themselves for past services not previously provided for in any manner, or in any way to appropriate to their own use the property or funds of the company on the plea of payment for services voluntarily rendered, under no contract therefor, and thus absorb or even diminish its means of discharging its just obligations, to the detriment of actual creditors. A corporation has no right to give away its property, leaving its creditors unpaid and not provided for, and any transfer of its assets not made in the usual course of business, and for value, will be set aside, and the lien of its creditors enforced in equity.

It remains to be seen whether the court was justified in requiring the appellant to pay anything, and, if he was liable in any amount, whether the decree was not for too large a sum. If appellant received no more than his just and legal dues, leaving out of consideration the $6000 allowance, then he is not liable for any sum, and the decree is clearly erroneous. The appellant was charged by the corporation (as its account, if understood, shows,) with book accounts at forty-five per cent of their face, $5140.78, and for $29,259.97 at

thirty-five per cent of their face, amounting to $10,240.99, making in all a charge of $15,381.77, which lacked $474.69 of balancing his account, which was composed of the $6000 allowance, and $9856.46, the latter being for the moneys advanced by him, and interest. In this account of $15,381.77 the appellant was charged with $3330.70 of notes, which he claims were never delivered to him; they being in the hands of attorneys for collection; and he also claims that he was wrongfully charged $800 for another note. We regard the adjustment of the several items of the account as constituting but one transaction or demand, which was attempted to be paid and balanced by the transfer of the notes and accounts, the sum actually due him from the corporation.

Appellant claims that he has allowed the corporation for the notes and accounts taken by him more than they were worth, and would not have taken them at the price he did had he understood that only a part of his claim was to be allowed and paid thereby, and that he took such notes and accounts not expecting to have to advance any money therefor, as he would, at the prices agreed, if his $6000 allowance is rejected. He also insists that if the contract is set aside and declared void at all, it should be *in toto*, and not in part, and that he should then be charged for said notes and accounts only the sums he has actually collected and received thereon, and should not, in any event, be charged for more than the actual value of those uncollected. There is force in this position. We think he should not be bound conclusively by the price he agreed to give, as that contract, when avoided, can not bind him or any one else, although he could not himself have had it set aside. If appellant will render a full account of the net proceeds of that portion of these securities and demands which he has converted into money or disposed of, and turn over to the receiver that part of the same which he still holds, he ought not to be required to refund any money except the excess of the net receipts

over and above his demand for moneys advanced to the company, and interest thereon.

The judgment of the Appellate Court is reversed, with directions to reverse the decree and remand the cause for further proceedings in accord with the views here expressed.

*Judgment reversed.*