WILLIAM A. BLOCKER *et al.*, Plaintiffs-Appellees, *v.* DRAIN LINE SEWER & WATER COMPANY *et al.*, Defendants—(ALLEN R. COHEN, Trustee in bankruptcy of Drain Line Sewer & Water Company Intervenor-Counter-plaintiff-Appellant, and PATRICIA BOGGIA, Individually and as Admr. of the Estate of ANTHONY BOGGIA, Deceased, Defendant-Appellant.)

(No. 71-176;

Second District—April 27, 1972.

Melvin B. Lewis and Richard B. Caifano, both of Chicago, for appellants.

Robert G. Jaros, of Lisle, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiffs, William A. Blocker and Carole Blocker, his wife, filed suit against Drain Line Sewer & Water Company, a corporation, and Tony Boggia, in two counts; the first count being for possession of certain premises and the second count being a cause of action against Boggia only, for $15,000, allegedly due for 150 shares of Drain Line stock. Boggia filed an answer in his own behalf and on behalf of the corporation, also a counter claim to vest title to the property in the corporation because of its payment of the purchase price, and alleged fraud against himself individually perpetrated by Blocker, the plaintiff.

Drain Line Sewer & Water Company was an Illinois corporation, the stock being held in equal parts by Blocker and Boggia. They were also the only directors and officers of the corporation. On October 4, 1967, Blocker and Boggia entered into an agreement to purchase an unfinished building in Lisle, Illinois, from one Trayer, in their own names. Pursuant to such agreement they paid Trayer the sum of $7000 and drew two

checks in the sum of $3500 each from the corporate account; the stubs of which were marked "Draw $3500 Bill and $3500 Tony." They likewise paid from funds of the corporation $378.50 of accrued taxes against the building, and a further sum of $150 for attorney fees in connection with the closing. They then spent $9881 of the corporate funds in finishing or rebuilding the building on the premises. They went into possession and through June of 1969 paid the sum of $328 per month on the contract and on the taxes, again from corporate funds. During this period both Blocker and Boggia drew the sum of $300 each for weekly salaries.

At the time of the purchase of the building the corporation owed $86,000 in accounts payable, while their accounts receivable were about $30,000, and the corporation had about $10,000 in the bank. Four months later, in December of 1967, the corporate bank account was reduced to $442.92. Thus, at the time of the purchase of this property, as the trial court stated, the corporation was essentially "flat broke."

Two months later, in February of 1968, Blocker, a director-shareholder holding 50% of the stock entered into an agreement with Boggia, the other director-shareholder, whereby Blocker agreed to sell to Boggia his stock for the sum of $15,000. As security for the payment of the $15,000 Boggia gave Blocker and his wife a quit claim deed to the property in question. Boggia did not pay any part of the $15,000 and Blocker then recorded the quit claim deed in August, 1968. He then sought possession of the building and in November of 1968 the instant suit was filed.

In September, 1970, Drain Line was adjudicated a bankrupt with assets of $13,500 and liabilities of $49,142.58. The bankruptcy court appointed Allen R. Cohen as Trustee for Drain Line. In the meantime Boggia had died and Blocker had amended his complaint against the Administrator. Blocker did not make the Trustee a party to the suit although in his amended complaint he named the bankrupt corporation as defendant. The bankruptcy trustee was granted permission to substitute for the bankrupt corporation and the trustee filed an amended counterclaim against Blocker, his wife, and Boggia's widow individually and as Administratrix, claiming the premises in question as part of the bankrupt estate.

The case was heard by the trial court which held, first, that there was no evidence of a loan to the director shareholders in the sum of $3500 each. However, the plaintiff Blocker specifically testified that it was a loan. Nonetheless the court held that Blocker and his wife were indebted to Drain Line Sewer & Water Company in the sum of $3500.

The trial court further held in substance that the purchase of the property with corporate funds, the improvement of it with corporate

funds, the payment of the accrued taxes and closing attorney fees with corporate funds, was "a legitimate action" in making a draw against whatever accounts they had.

Evidence was introduced as to the assets and the liabilities of the corporation both at the time of the purchase of this property and at the time of the bankruptcy petition. There is no question but that this corporation was insolvent both in 1967 at the time of the purchase of the property with corporate funds and was insolvent at the time of the filing of the bankruptcy petition.

The plaintiff Blocker proceeded against the defendant Patricia Boggia, both individually and as Administratrix of the estate of Anthony Boggia, solely on a claim in forcible entry and detainer. At the conclusion of the Plaintiff's case Boggia moved for judgment and the court entered a judgment dismissing plaintiff's complaint against Boggia. Three days later without notice, the court entered a decree in favor of the plaintiff Blocker holding that "the trustee in bankruptcy of Drain Line and that Patricia Boggia, Administratrix of the estate of Anthony Boggia, deceased, have no interest or claim whatsoever in and to said property." This order is patently inapplicable to the issues. This order was entered after Boggia had been dismissed out as a party to the proceedings.

Without going into detail, the sole question before this court is whether this action on the part of the director-shareholders in purchasing property, making payments thereon with corporate funds while putting title thereto in their own name, brings it within the purview of the Federal Bankruptcy Act.

Rephrased, the question resolves itself to the single proposition that the sole director-shareholders of an insolvent corporation purchased property, improved it, made payments on it from corporate funds, took title in their own name and then plaintiff claims that it is not an asset of the corporation, insolvent both at the time of the purchase and insolvent two or three years later. It is also to be noted that all during the period in question the sole director-shareholders drew $300 a week from the corporation.

■■ It is fundamental that the director-shareholders of a corporation may not convert the assets of an insolvent corporation at any time to their own use. This was first stated in 1885 in the case of *Bouton v. Smith,* 113 Ill. 481 at 489:

"It will not do to allow either the officers or stockholders of a private corporation organized for pecuniary profit, after incurring a large indebtedness, and while actually insolvent, by vote to set apart moneys or corporate property to themselves for past services not previously provided for in any manner, or in any way to appropriate to their own

use the property or funds of the company on the plea of payment for services voluntarily rendered, under no contract therefor, and thus absorb or even diminish its means of discharging its just obligations, to the detriment of actual creditors. A corporation has no right to give away its property, leaving its creditors unpaid and not provided for, and any transfer of its assets not made in the usual course of business, and for value, will be set aside, and the lien of its creditors enforced in equity."

In *Landers, Frary & Clark v. Vischer Products Co.* (1952), 104 F.Supp. 411 at 417, the court stated:

"The transfer of corporate assets to stockholders without adequate consideration, even without intent to defraud, while the creditors are left unpaid or unprovided for is fraudulent as to such creditors. (citation) The actual intent to defraud is not a necessary element. A constructive fraud will be inferred from the facts and circumstances surrounding the transfer."

See also *In re Moraine Hotel Co. v. Chicago Title & Trust Company*, 107 Fed.2d, 550; *Johnson v. Canfield-Swigart Co* (1920), 292 Ill. 101, 126 N.E. 608, 615.

■■ There is no question in this court's opinion but that such action by the corporate director-shareholders is a fraud upon the creditors of the corporation. There is no question from an examination of the record but that there are many legitimate creditors of the corporation whose claims totalled at the time of bankruptcy $49,142.58 and that the right, title and interest of the trustee in bankruptcy to the property in question was superior to the right of all other parties to this suit. The real property purchased and improved with corporate funds is an asset of the bankrupt estate.

The trial court made various other findings which are not pertinent at this time in view of our holding herein.

Accordingly the cause herein is reversed and remanded with directions to the trial court to vacate its prior order and enter an order consistent with this opinion.

Reversed and remanded.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.