FRANK MACALUSO *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* JOHN JENKINS *et al.*, Defendants-Cross-Appellants.—(PAULETTE ZECCA, Defendant-Appellee.)

Second District    Nos. 79-677, 80-116 cons.

Opinion filed April 28, 1981.

462

John P. DeRose, of DeRose & Russo, of Oak Brook, for appellants.

Anthony Bruno, of Melrose Park, and Sidney Z. Karasik, of Chicago, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The plaintiffs, Frank Macaluso and Image II, Inc., brought suit to recover payment of an amount due under a contract for artwork and printing completed by plaintiffs in 1977. The defendants named in the suit include: Industrial Police Association, a nonprofit corporation; John Jenkins, individually, and as chairman of the board and treasurer of the Industrial Police Association; Paulette Zecca, individually, and as secretary of the Industrial Police Association, and Shirley Blanford, individually, and as agent of International Cleaning Services, Inc.

Trial by jury commenced on October 2, 1979. At the close of plaintiffs' case, the trial court granted Paulette Zecca's and Shirley Blanford's motion to dismiss them as defendants. The case went to the jury as to the defendants John Jenkins and the Industrial Police Association. On October 12, 1979, the jury rendered a verdict for the plaintiffs and against the

defendants John Jenkins, individually, and the Industrial Police Association. The verdict awarded to the plaintiffs the sum of $28,860.71. The plaintiffs take this appeal from the dismissal of Paulette Zecca as a defendant. The defendant, Jenkins, cross-appeals from the jury verdict holding him personally liable. International Police Association has not appealed the jury verdict.

In 1973 the defendant, John Jenkins, founded Continental Security (Continental), a corporation. Jenkins was not only the founder of Continental, but also the president and chairman of the board. Continental provided armed guards and night watchmen for various offices and industrial sites. At that time, Jenkins was also employed as a police officer and ran his own private investigation firm. In 1975, Jenkins employed the defendant, Paulette Zecca, as a guard with Continental. Her prior employment had been as a secretary. Initially, Ms. Zecca also did secretarial work at Continental. Within a year, she became an assistant director of security for Continental.

During this time, Jenkins conducted both of his businesses out of offices located at 1127 South Mannheim Road in Westchester, Illinois. In January of 1977, Zecca, who continued to work for Jenkins at the 1127 Mannheim Road address, founded a janitorial service for commercial buildings, the International Cleaning Service (International). She had about four or five employees and she states that she originally operated her business out of her home and that she later moved that business to Downers Grove. In a recent telephone directory, however, the address for International was listed as 1127 Mannheim Road, Westchester, Illinois. Moreover, Zecca indicated that she spent a considerable amount of time, sometimes 7 days a week, working at that address.

The evidence also indicated that International often paid the rent for the offices at the Mannheim Road address. These offices contained three desks. One desk was used by Jenkins, another by Zecca and a third by Shirley Blanford. Mrs. Blanford did secretarial work, including answering the phones, for International. As late as 1978, a phone call to the 1127 Mannheim Road address would enable the caller to hire a security guard, to contract with a cleaning service or to join the Industrial Police Association.

In February of 1977, Jenkins founded the Industrial Police Association (I.P.A.), a nonprofit, professional organization for security guards. I.P.A.'s offices are also located at 1127 Mannheim Road, Westchester, Illinois. Jenkins is not only the founder of I.P.A., but also the treasurer and chairman of the board of directors. Zecca is the secretary and also a member of the board of directors of I.P.A. Officially, I.P.A. has no salaried employees; Jenkins and Zecca volunteer their time to I.P.A. Membership dues are the primary source of income for I.P.A.

In early 1977, the plaintiff, Macaluso, and Jenkins engaged in several discussions, which led to the contract at issue in this case. As a result of these discussions, Macaluso and his firm, Image II, Inc., designed, printed and delivered numerous printed materials to the I.P.A. At trial, the jury found that under this contract, I.P.A. and Jenkins owed $28,860.71 to Macaluso and firm. Neither I.P.A. nor Jenkins challenges the jury's finding that $28,860.71 was due on the contract. The only issue Jenkins raises on appeal is whether he can be held personally liable.

On appeal, Jenkins asserts that the contract is only between I.P.A., a nonprofit corporation, and Macaluso or his firm and, therefore, Jenkins is not personally liable. Macaluso on the other hand asserts that due to Jenkins' method of handling I.P.A.'s assets, the corporate existence should be disregarded and Jenkins should be held personally liable.

■■ Under Illinois law, a corporation is a legal entity that exists separate and distinct from its shareholders, officers and directors. As a general rule, the officers and directors are not liable for the corporation's debts and obligations. (*Gallagher v. Reconco Builders, Inc.* (1980), 91 Ill. App. 3d 999, 1004; *Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 27. See also *Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988; *Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.* (1963), 45 Ill. App. 2d 192.) However, a corporate entity will be disregarded and the veil of limited liability pierced where it would otherwise present an obstacle to the protection of private rights, or when the corporation is merely the alter ego or business conduit of a governing or a dominating personality. (*Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 27.) Thus,

> "For the doctrine of traditionally known as the 'piercing of the corporate veil' to apply two requirements must be met: first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Gallagher v. Reconco Builders, Inc.* (1980), 91 Ill. App. 3d 999, 1004; *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128-29; see also *Central States Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.* (1978), 66 Ill. App. 3d 709.

■■ Jenkins contends that because I.P.A. is a not-for-profit corporation organized under the General Not For Profit Corporation Act (Ill. Rev. Stat. 1977, ch. 32, par. 163a *et seq.*), the remedy of piercing the corporate veil is not available to the plaintiffs. In his brief, Jenkins points out that the General Not For Profit Corporation Act contains no exception to the limitation of directors' liabilities similar to the exception found in section 42 of the Business Corporation Act. (Ill. Rev. Stat. 1977, ch. 32, par.

157.42.) We note that this section of the Business Corporation Act merely creates statutory liabilities that are an addition to those already imposed by law; moreover, piercing the corporate veil is an equitable remedy which "completely disregards this statutory network creating and supporting corporate structures." (Brioda, *The History of the Development of the Remedy of "Piercing the Corporate Veil"*, 65 Ill. B. J. 522, 523 (1977).) I.P.A.'s status as a not-for-profit corporation in and of itself should not bar a court from applying the equitable remedy of piercing the corporate veil. In the case of *People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, the court pierced the corporate veil of a nonprofit corporation in order to avoid the evasion of a statutory duty imposed by the State.

In *Illinois State Troopers Lodge No. 41*, however, the court did not address the issue of ownership of a not-for-profit corporation and, under *Gallagher* and *Pintozzi*, the first requirement of piercing the corporate veil is finding a "unity of interest and ownership." Thus, it can be argued that because a not-for-profit corporation has no shareholders and Jenkins, therefore, cannot and does not own the I.P.A., the ownership aspect of the first requirement, at least from a technical standpoint, cannot be met. However, piercing the corporate veil is essentially equitable in character (*Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23), and an equitable remedy looks to the substance rather than to form (*People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 131).

There is evidence that Jenkins exercised ownership control over the corporation. While Jenkins testified that there was a president and one or more vice-presidents of I.P.A., and that there were six other directors of I.P.A., he failed to introduce evidence which would indicate that these persons played any role in the management of the organization. Rather, Jenkins indicates that he made most or all of the decisions concerning the I.P.A. At trial, he testified that even Zecca, who was both an officer and on the board of directors, had no input into the decisions he made concerning I.P.A. His testimony also indicates that when the contract was being negotiated with plaintiffs, he was the sole representative for I.P.A. The evidence also shows that Jenkins made all the decisions concerning seminars held by the I.P.A. and that Jenkins had the power to authorize loans to I.P.A. Apparently, without holding an election or consulting the board of directors, Jenkins also had the authority to appoint vice-presidents of I.P.A. The evidence also indicates that he unilaterally decided to start, and later, to dissolve an I.P.A. office in Florida.

Moreover, the evidence indicates that Jenkins intended to profit from the "non-profit" corporation. At trial, Zecca testified that originally I.P.A. was to pay all of the rent for the 1127 Mannheim Road offices. The evidence further indicates that Jenkins' other enterprises were to continue

to function out of these offices subsidized with I.P.A. funds. Although the evidence indicates that I.P.A. did provide some services for its members, there is also evidence from which a jury could infer that Jenkins created the organization with an eye towards the profitable fringe benefits which might befall him as chairman of the board and treasurer of the corporation.

From this, and other evidence presented at trial, a jury could have found that, even though Jenkins did not and could not own shares of I.P.A., he did exercise ownership control over the corporation to such a degree that the separate personalities of I.P.A. and Jenkins did not exist, and that I.P.A. was a business conduit of Jenkins.

Similarly, there is evidence from which a jury could have found that the second requirement of *Pintozzi* and *Gallagher* has been met. In this case, there exists at least three of the circumstances which justify the piercing of the corporate veil.

One of these circumstances is a failure on the part of the defendant to maintain adequate corporate records or to comply with corporate formalities. (*Berlinger's Inc. v. Beef's Finest, Inc.* (1978), 57 Ill. App. 3d 319; *In re Bowen Transports, Inc.* (7th Cir. 1977), 551 F. 2d 171.) At trial, Jenkins admitted that he alone was responsible for the receipts and disbursements and that in 1977, while treasurer of I.P.A., he kept no books or financial records for I.P.A.

Another condition that can be considered when disregarding corporate existence is the commingling of funds or assets. (*Wikelund Wholesale Co. v. Tile World Factory Tile Warehouse* (1978), 57 Ill. App. 3d 269.) Macaluso contends that Jenkins commingled the funds of his various enterprises. In support of his position, he introduced into evidence a check for $2,000 drawn on I.P.A.'s account and made out to Jenkins' other corporation, Continental. The evidence also indicates that I.P.A. shared the same office and phone number with other enterprises of John Jenkins and Paulette Zecca, including Jenkins' private investigation firm and Continental Security, as well as Zecca's International Cleaning Services. When testifying, Zecca admitted that the original plan was to have I.P.A. pay the phone bills and the rent for the 1127 Mannheim Road offices. From this and other evidence presented at trial, the jury could have concluded that Jenkins commingled the funds of his various enterprises.

A third circumstance which justifies piercing the corporate veil can be found when the defendant treats the assets of the corporation as his own. (*Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 28; *Finazzo v. Mid-States Finance Co.* (1965), 63 Ill. App. 2d 161.) At trial, Macaluso introduced, among other things, the following evidence: a check drawn for $275.48 for automobile repairs on Jenkins' car; a considerable number of checks payable to various restaurants and lounges to

cover amounts due on Jenkins' personal account; several checks, all over $100, payable to John Jenkins; and several checks made out to cash and endorsed by Zecca or Jenkins. Furthermore, Jenkins admitted that he personally made donations to charitable causes and then authorized Zecca to issue a check reimbursing him for part of that donation. He also authorized the issuance of a check for $350, drawn on an I.P.A. account, to help a friend make a payment on the friend's Florida condominium.

Overall a significant amount of evidence was introduced at the trial from which a jury could have concluded that Jenkins treated the assets of I.P.A. as his own. As stated in *State Bank v. Benton* (1974), 22 Ill. App. 3d 1007, 1010:

> "Thus the defendant attempts here to use the corporate entity for his own personal benefit to the exclusion of the plaintiff, and thereby becomes unjustly enriched at the expense of the corporate creditors. Under such circumstances, we are of the opinion that the authorities require that the corporate veil be pierced and the defendant be held personally liable for the payment of this indebtedness. It seems perfectly clear that the protective cloak of corporate entity is sought to be used for his own personal enrichment and to accomplish an unjust result."

■■ In the case at bar, there was sufficient evidence for a jury to find that Jenkins exercised control over I.P.A. in such a manner that I.P.A. became the alter ego of Jenkins. The jury verdict which pierced the corporate veil and held Jenkins personally liable was not against the manifest weight of the evidence, and the judgment in favor of the plaintiffs and against the defendant Jenkins in the sum of $28,860.71 is affirmed.

The other issue before this court on appeal is whether the trial court erred in granting Zecca's motion for a directed verdict. The plaintiffs' assert that sufficient evidence was introduced from which a jury could have found Zecca personally liable on the following four bases: (1) that the corporate entity should be disregarded and Zecca, as an alter ego of I.P.A., should be held personally liable; (2) that Zecca should be held personally liable for the corporate debts of I.P.A. because she assisted Jenkins in his conversion of corporate assets into his own personal assets; (3) that Zecca is personally liable because she was guilty of and assisted in perpetrating a fraud upon the plaintiffs; (4) finally, that Zecca should be held liable because she breached a fiduciary duty owed the plaintiffs.

The evidence introduced at trial indicated that Zecca was only a part-time voluntary clerical worker who occasionally made out and signed the checks authorized by the treasurer, Jenkins. The evidence indicates that while she was the secretary of I.P.A., she neither had nor assumed any responsibility for keeping the I.P.A.'s financial records. Zecca's uncontroverted testimony reveals that she did only what Jenkins

authorized her to do and that she had little or no input into corporate decisions. No evidence was introduced from which a jury could have found that Zecca exercised sufficient ownership and control to be the alter ego of I.P.A. Rather, the evidence overwhelmingly indicates that Zecca was, in fact, merely a clerical volunteer for the I.P.A.

Nor is there sufficient evidence to support plaintiff's contention that Zecca commingled funds. Plaintiffs argue that Zecca and her corporation commingled funds by loaning the I.P.A. over $9,000 and by paying I.P.A.'s phone bills and rent. Plaintiffs can hardly argue that Zecca's "commingling" harmed them. Plaintiffs have only benefitted from Zecca's "commingling" which only increased I.P.A.'s assets. It should be noted that the equitable remedy of piercing the corporate veil will be applied only when failure to use it would promote an injustice. *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 128-29.

Plaintiffs' also assert that the corporate veil should be pierced and Zecca should also be held liable on the ground that I.P.A. was thinly capitalized. The General Not For Profit Corporation Act does not establish a duty to capitalize nonprofit corporations. Plaintiffs were well aware that I.P.A. had little or no assets. Plaintiffs, who consented to contract with a nonprofit corporation, knowingly assumed the risk that the I.P.A. was thinly capitalized. The trial court properly refused to apply the equitable remedy of piercing the corporate veil with regard to Zecca.

■■ Nor is there sufficient evidence to support a finding that Zecca is personally liable because she assisted Jenkins in his conversion of corporate assets. Plaintiffs rely on the case of *Blocker v. Drain Line Sewer & Water Co.* (1972), 5 Ill. App. 3d 289, for the proposition that officers of a corporation who assist in the conversion of corporate assets into personal assets to the detriment of creditors may be held personally liable. They attempt to assert that this proposition imposes personal liability to third-party creditors upon all officers who knew or should have known of the conversion. *Blocker* does not go that far. While *Blocker* holds that prior to filing a bankruptcy petition, a party may not convert corporate assets to personal assets, the court did not impose upon the parties to the conversion personal liability for all debts to third-party creditors. The court held only that the converted funds were assets of the bankrupt estate. *Blocker* does not create an exception to the general rule that officers and directors are not personally liable for the corporation's debts and obligations. While there is evidence that at the direction of the treasurer, Jenkins, Zecca signed checks that assisted him in converting corporate assets into his own personal assets, and while this negligent conduct as a secretary may have created some liability to the corporation, it does not create a personal liability for all corporate debts.

Nor is there any basis for plaintiffs' charge that defendant Zecca was

personally liable because she was guilty of and assisted in perpetrating a fraud upon the plaintiffs. An essential element of fraud or misrepresentation is that the plaintiffs were induced by the fraud to act to their detriment. (*Zaborowski v. Hoffman Rosner Corp.* (1976), 43 Ill. App. 3d 21, 23.) At trial, the plaintiffs failed to introduce any evidence of any misrepresentation or fraudulent concealment made by Zecca which induced their decision to enter into or perform the contract in question.

Finally, plaintiffs argue that defendant Zecca is personally liable because she breached a fiduciary duty owed to third-party creditors. Generally, an officer or employee of a corporation has no fiduciary duty to creditors of the corporation; such persons deal at arms length. *Richards v. North Henderson Grain Co.* (1941), 308 Ill. App. 386, cited by plaintiffs, is distinguishable from the facts in this case. In that case, the directors of the defendant corporation over a period of years had allegedly developed a practice of wrongfully selling plaintiff's stored grain in order to secure cash to carry on the corporation's business. In that case, a bailor-bailee relationship existed between the parties, and the converted goods belonged to the plaintiffs. Because of these unusual circumstances and because the acts complained of were not isolated acts, but were pursuant to a practice that had allegedly been engaged in by the corporate officers over a period of years, the court found that, unless properly explained, the corporate officers' lack of knowledge would present a case of gross negligence and thus personal liability to the bailee. In the instant case, no assets of the plaintiffs were converted, nor is there any evidence that the conduct of Zecca in following Jenkin's directions amounted to gross negligence. Thus, under the circumstances, there was not a breach of any duty owed by Zecca to plaintiffs.

To summarize, Zecca cannot be held personally liable for the debts of I.P.A. unless it can be shown that she has fraudulently made misrepresentations which induced the plaintiffs to enter into its contract with I.P.A., or that conditions are such that the corporate veil can be pierced, or that she actively converted and misappropriated funds, or that by gross negligence she breached a fiduciary duty owed to the plaintiffs. Considering all the evidence in this case viewed in its aspect most favorable to the plaintiffs, it so overwhelmingly favored the defendant, Zecca, that a contrary verdict based on this evidence could not stand, and the trial court properly directed a verdict in favor of the defendant Zecca. The order of the trial court directing a verdict in favor of the defendant, Zecca, and against the plaintiffs is affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.