The BOATMEN'S NATIONAL BANK
OF ST. LOUIS, Plaintiff,

v.

Robert F. SMITH and M–T Acquisition
Corporation, Defendants.

No. 86 C 7336.

United States District Court,
N.D. Illinois, E.D.

Feb. 9, 1989.

John K. Eggers, Abramson & Fox, Chicago, Ill., for plaintiff.

Jerome F. Crotty, Rieck & Crotty, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

We rule herein on the motion for turnover order submitted by plaintiff Boatmen's National Bank of St. Louis. That motion is granted.

On December 17, 1986, this court entered judgment against defendants Robert F. Smith and M–T Acquisition Corporation in the amount of $1,563,488.80. As no part of that judgment has as yet been satisfied, plaintiff attempts herein to reach funds held in the name of RFS Enterprises, Inc. ("RFSE") at the Jefferson State Bank ("Jefferson"). Plaintiff contends that RFSE should turn over the Jefferson funds in satisfaction of the judgment against defendant Smith because RFSE has no separate corporate existence and is merely Smith's alter ego.

## I. *"Reverse" Piercing of Corporate Veil Appropriate*

It is hornbook law that the shielding of individual liability provided by incorporation can be pierced where certain circumstances are present. *See* Broida, *The His-*

*tory of the Development of the Remedy of "Piercing the Corporate Veil,"* 65 Ill.B.J. 522 (1977). The relevant requirements for piercing the veil in Illinois have been described by the various state courts, including the state's Supreme Court:

> Generally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice.

*Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 205, 427 N.E.2d 94, 101, 56 Ill.Dec. 14, 21 (1981). Defendants cannot and do not dispute this immutable line of cases.

Instead, defendants contend there is no legal basis for piercing the corporate veil "in reverse;" that while a judgment against a corporate entity can, in certain circumstances, be satisfied by the individual standing behind the corporate shield, that armour effectively precludes an attempt to satisfy a judgment against the individual with corporate funds, whether merely an alter ego or not.

Before invoking the relevant case law which forms the foundation for piercing "in reverse," we note that defendants have failed to provide us with legal support for their own position. This inability is relevant because, at the outset, we note that the concerns which form the basis of the traditional doctrine are quite applicable to piercing "in reverse"—that corporate status not encourage irresponsible individual activity by shielding wealth from efforts to assess responsibility for those actions.

Although no Illinois court has squarely addressed this issue, there is ample authority from other jurisdictions to support plaintiff's theory. *See, e.g., Dahl v. Gardner*, 583 F.Supp. 1262, 1268 (D. Utah 1984) ("the equitable alter ego doctrine may be applied in the 'reverse' sense to disregard the corporation to reach corporate assets for the obligations on an individual"). Other federal courts applying the law of other jurisdictions have pierced the corporate veil to satisfy an individual's tax liability. *See,*

*e.g., G.M. Leasing Corp. v. United States,* 514 F.2d 935 (10th Cir.1975), *aff'd in part, rev'd in part on other grounds,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); *see also Valley Finance, Inc. v. United States,* 629 F.2d 162, 171–73 (D.C.Cir.1980), *cert. denied sub nom., Pacific Development, Inc. v. United States,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). Illinois law finds nothing sacrosanct about limited liability. For example, the veils of subsidiary corporations have been pierced so as to satisfy judgments resulting from acts of the corporate parent. *See, e.g., FMC Finance Corp. v. Murphree,* 632 F.2d 413 (5th Cir.1980) (applying Illinois law); *see also Crum v. Krol,* 99 Ill.App.3d 651, 425 N.E.2d 1081, 54 Ill.Dec. 864 (1st Dist. 1981); *Earp v. Schmitz,* 334 Ill.App. 382, 79 N.E.2d 637 (1st Dist.1948). As a legal matter, therefore, we find nothing problematic about reversing the traditional piercing procedure.

II. *The Prerequisites for Piercing are Met*

We now apply the relevant standards to the facts at bar. The requirements in Illinois were set forth by the Seventh Circuit:

[F]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

*Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 569–70 (7th Cir. 1985). *See also Macaluso v. Jenkins,* 95 Ill.App.3d 461, 420 N.E.2d 251, 50 Ill.Dec. 934 (2d Dist.1981); *Gallagher v. Reconco Builders, Inc.,* 91 Ill.App.3d 999, 415 N.E. 2d 560, 47 Ill.Dec. 555 (1st Dist.1980).

The alter ego requirement set out first above is clearly met in this case. RFSE is an Illinois corporation of which Smith is the sole shareholder, director, president and treasurer (tr. 3). Also relevant is that the assets of Smith, the individual, and RFSE were commingled. The latter paid some $93,976.35 in personal expenses for Smith (tr. 29–30). It is not unreasonable to say that both Smith and his wife have no individual finances; Smith does not keep a bank account in his own name; his wife pays household expenses by borrowing money from the companies—those loans are not reduced to notes payable to the companies, they are not secured, and they represent, to the best of Smith's own knowledge, the sole source of funds for his wife's checking account (tr. 197–98). These facts are more than sufficient to meet the alter ego portion requirement.

It is also clear that separate corporate existence would sanction a fraud or promote injustice. That plaintiff would be denied a judicially-imposed recovery seems injustice enough. Defendants' sole argument on this issue is that plaintiff suffered no harm since money flowed in only one direction. Since Smith received funds from RMSE and not vice versa, defendants claim there was no "commingling" and, if anything, Smith had more funds to satisfy plaintiff's judgment. We consider this argument merely a reformulation of defendants' argument above, that piercing "in reverse" is inappropriate. On these facts, therefore, it would appear the second requirement was met once we held the piercing standard to be appropriate.

Defendants' reliance on *Macaluso v. Jenkins, supra,* is misplaced. It is true that the court took notice of the fact that the co-defendants' commingling only increased the corporation's assets. 95 Ill.App.3d at 468, 420 N.E.2d at 257, 50 Ill.Dec. at 940. But that finding was *dicta,* at best. It was made in addition to numerous other reasons for dismissal of the claims against the co-defendant. For example, the court found that "[n]o evidence was introduced from which a jury could have found that Zecca exercised sufficient ownership and control to be the alter ego of I.P.A." *Id.* Suffice it to say, there is ample evidence here.

CONCLUSION

For the foregoing reasons, plaintiff motion for turnover order is hereby granted.