2019 IL App (1st) 182019

THIRD DIVISION
September 30, 2019

No. 1-18-2019

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PRO SAPIENS, LLC, | ) | |
| | ) | Appeal from the Circuit Court of |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 14 L 5730 |
| INDECK POWER EQUIPMENT COMPANY, | ) | |
| | ) | |
| Defendant-Appellee | ) | Honorable Patrick J. Sherlock, |
| | ) | Judge Presiding |
| (Emmanuel Jacob, Appellant). | ) | |

PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices McBride and Cobbs in the judgment and opinion.

**OPINION**

¶ 1    Pro Sapiens, LLC (Pro Sapiens), sued Indeck Power Equipment Company (Indeck) for breach of contract, unjust enrichment, and a violation of the Sales Representative Act (820 ILCS 120/0.01 *et seq.* (West 2014)), alleging that Indeck stiffed Emmanuel Jacob, Pro Sapiens's salesman, out of a commission from the sale of two Indeck boilers to Venezuela's state-owned oil and gas company. During discovery, Indeck learned that Jacob lied in discovery and destroyed evidence—specifically, three years' worth of e-mails from his personal Yahoo e-mail account. From there the case went off the rails for Pro Sapiens: The court dismissed its case with

prejudice pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002) and, to boot, imposed monetary sanctions against both Pro Sapiens and Jacob personally.

¶ 2    Jacob filed a *pro se* notice of appeal for himself and Pro Sapiens. But Jacob is not a lawyer, so the notice of appeal was defective as to Pro Sapiens. On Indeck's motion, this court dismissed Pro Sapiens from this appeal for failure to file a notice of appeal. So the only appellant properly before us is Jacob.

¶ 3    Jacob raises several challenges to numerous orders the circuit court entered, including an order granting Pro Sapiens's first attorney leave to withdraw, the order dismissing Pro Sapiens's suit as a discovery sanction, and an order denying a motion to reconsider the dismissal. But those claims belong to Pro Sapiens and only Pro Sapiens. In the absence of an appeal by Pro Sapiens, we lack jurisdiction to consider those claims. To that extent, we must dismiss the appeal.

¶ 4    The imposition of sanctions against Jacob personally—the one issue Jacob obviously *may* raise—is another story. Because Jacob was never served with process sufficient for the court to confer personal jurisdiction over Jacob, the order of sanctions against Jacob individually is void. We vacate that order only as to Jacob personally and remand for further proceedings.

¶ 5                                    BACKGROUND

¶ 6    This case has an enormous record and convoluted procedural background. We will make our best attempt at brevity, sticking to only the necessary information to resolve this appeal.

¶ 7                              I. General Background

¶ 8    The nonparty appellant, Emmanuel Jacob, is a resident of Arizona. From 1994 to 2012, Jacob worked at Honeywell selling control systems for oil refineries. From 2012 to 2015, Jacob worked for a company called SPT Group (SPT), where he sold software for the oil industry. In March 2015, SPT laid off Jacob. Thereafter, Jacob began working full-time at Pro Sapiens.

¶ 9     Plaintiff Pro Sapiens is an Arizona limited liability company that, according to Jacob, "sells equipment solutions" to "various companies" in Latin America. Pro Sapiens was formed by Jacob in 2008 and has two employees, Jacob and his wife.

¶ 10    Defendant Indeck is an Illinois corporation based in Wheeling. Indeck sells and rents boilers for industrial applications, including, as relevant to this case, oil refineries.

¶ 11    Petroleos de Venezuela, S.A. (PDVSA), is Venezuela's state-owned oil and natural gas company. Carlos Moreno and Ciro Pena are former PDVSA employees.

¶ 12    In sum and substance, Jacob claimed that he brokered the sale of two boilers on Indeck's behalf to PDVSA for a PDVSA oil refinery and that Indeck had agreed to pay Jacob a commission of 10% on the sale. Indeck denied that it owed Jacob anything.

¶ 13    Multiple lawsuits followed, and in the third one—the one before us—Indeck naturally sought to discover any communications Jacob may have had with PDVSA, including former employees Moreno and Pena, whom Jacob claimed were instrumental in the transaction he allegedly brokered.

¶ 14                        II. Motion for Rule 219 Sanctions

¶ 15    Again summarizing an extremely long journey: Indeck ultimately came to the conclusion that Pro Sapiens and Jacob had committed egregious discovery violations, including deleting e-mails before a court-ordered forensic review of Jacob's e-mails, lying in discovery about the existence of such e-mails, and omitting the existence of a second e-mail account.

¶ 16    On May 24, 2016, Indeck filed a motion for Rule 219 sanctions. In that motion, Indeck asked the court to dismiss Pro Sapiens's lawsuit and impose monetary sanctions against Pro Sapiens and Jacob, personally.

¶ 17 It is undisputed that the notice of this Rule 219 motion was sent to counsel for the sole plaintiff in the case, Pro Sapiens, and only to that attorney.

¶ 18 Counsel for Pro Sapiens requested additional time to brief the sanctions issue and to introduce expert testimony on its behalf to rebut the claims in Indeck's motion. But neither Pro Sapiens or Jacob, individually, ever filed a written response. Nor did counsel for Pro Sapiens (or Jacob or any lawyer appearing on Jacob's behalf) appear at the hearing on the motion on July 20, 2016. At the end of the hearing, the court made the following ruling:

> "I have had a chance to review the motion long ago as well as in preparation for today's hearing, and I think I conveyed a message to Pro Sapiens' counsel, Mr. Utreras, that the motion or the motions raised serious issues that needed a response; and indeed, I continued the trial date, which I almost never do, because of the seriousness of the issues that are raised in the motion.
>
> *** No response was ever filed. So what I'm left with is a series of unrebutted contentions about the destruction of documents, about the destruction of e-mails, about the failure to produce information that is highly relevant to the case, a series of allegations, all supported by affidavit and other forensic information, that Mr. Jacob took upon himself after there was an order by this Court to not only preserve information but also to produce information so that Indeck could get to the bottom of Pro Sapiens' case but also so that Pro Sapiens could get to the bottom of the defense being set forth by Indeck Power in this case.
>
> It's the Court's view that Mr. Jacob and Pro Sapiens have violated the Court's order in such a gross way in the destruction of documents that are related to this case that the Court has no other recourse than to dismiss this case as a sanction for the various

4

discovery violations that have taken place up through very shortly before the start of the anticipated trial of this case. *** I've reviewed the information that was deleted by Mr. Jacob, or at least that was discovered as deleted by Mr. Jacob. There's just no excuse for the activity that's gone on, and the Court can only assume that the reason Mr. Utreras is not here today is because he really has no response to the very, very serious allegations that are being leveled against Mr. Jacob as it relates to his obligations in this litigation.

So I will dismiss the case with prejudice as a result of the discovery violations that the plaintiff has engaged in. I will order sanctions both against Pro Sapiens, LLC, and Mr. Jacob, including monetary sanctions in the award of attorneys' fees that you will submit a petition for as well as the expert costs that Indeck Power has incurred in connection with this litigation."

¶ 19    On August 17, 2016, Indeck filed a petition for fees to be awarded as a result of the Rule 219 monetary sanctions against Pro Sapiens and Jacob, requesting $332,338.92 in attorney fees, expert fees, and costs.

¶ 20                    III. Motion for Rule 137 Sanctions

¶ 21    Right around this time, also in August 2016, Indeck filed a motion for sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013) against Pro Sapiens and its first lawyer on the case, Mr. Landis. Although this Rule 137 motion is not before us on appeal, it plays a small role in this story. The gist of that motion was that this lawsuit was not filed in good faith in the first instance, and thus Pro Sapiens and the attorney who filed it, Mr. Landis, should be sanctioned. But unlike the Rule 219 motion, which sought sanctions for all conduct occurring after the discovery violations began, this motion alleged that *all* attorney fees and costs should be recoverable, from the outset of the case, because the case was fraudulent from the start. And also

5

unlike the Rule 219 motion, the Rule 137 motion was not directed at Jacob in his individual capacity.

¶ 22                    IV. Further Proceedings on Rule 219 Motion

¶ 23    On August 22, 2016, Pro Sapiens (not Jacob individually) filed a motion to vacate or reconsider the court's July 20 order that dismissed the case with prejudice and imposed sanctions against Pro Sapiens and Jacob individually under Rule 219. The motion to reconsider argued that Pro Sapiens's failure to file a response or attend the July 20 hearing was attributable solely to its attorney, Mr. Utreras. Mr. Utreras explained that around the time Indeck filed its Rule 219 motion, he was overburdened by other professional obligations, as well as personal family difficulties, that simply overwhelmed him. The motion argued that Pro Sapiens's newly retained expert's conclusion would demonstrate that Pro Sapiens was not guilty of flagrant discovery abuses.

¶ 24    On October 26, 2016, the court denied Pro Sapiens's motion to reconsider the Rule 219 sanctions. In its oral pronouncement, the court explained:

"I don't think in my years as a judge I have ever dismissed a case pursuant to 219 because I bend over backwards in an effort to avoid doing that. And I think in this case, I did do that. I struck a trial date. I never strike trial dates.

I granted you relief in the form of having a second bite at the apple, so to speak, when you said that you needed an expert, even though you should have known that you needed an expert in the first instance. Every opportunity was given to you and to your client to come forth with some evidence that the defendant's motion should be denied, and that opportunity was not taken. So on July 20th, the case was dismissed.

This motion is no[w] the third bite at the apple. ***

6

I find no basis to vacate my prior ruling. I'm not going to vacate my prior ruling, and I'm not going to reconsider the order."

¶ 25                    V. November 9, 2017 Hearing on Rule 137 Motion

¶ 26    The parties appeared for another hearing on November 9, 2017. Recall that the court's order imposing Rule 219 sanctions was entered in July 2016, so the parties were now nearly a year and a half removed from that date. By the time of this November 2017 hearing, the trial court had granted the Rule 219 motion, dismissing the case and imposing monetary sanctions, and it had denied a motion to reconsider that ruling. But the court had yet to fix the amount of monetary sanctions—the amount of attorney fees to which Indeck would be entitled. And Indeck's separate Rule 137 motion for sanctions against Pro Sapiens and its first attorney, Mr. Landis, was still pending.

¶ 27    At this November 2017 hearing, Jacob himself was present, along with Pro Sapiens's counsel, Mr. Utreras. The trial court told Jacob that it wanted to ensure that he understood that Indeck's Rule 137 motion was seeking over $500,000 in attorney fees, dating back to the beginning of the case, and Pro Sapiens had yet to file a written response. The court advised Jacob that Pro Sapiens would be well served to file a written response.

¶ 28    Mr. Jacob indicated that Pro Sapiens wished to file a written response. He also tried, as did Pro Sapiens's lawyer, Mr. Utreras, to discuss the background of the case, to explain that Jacob did not commit the discovery violations of which he was accused, and that Pro Sapiens's expert would help them so establish. The trial court admonished both Jacob and Mr. Utreras that he would consider any expert testimony "on why I should deny this 137 motion" but that the court was "not going to revisit all of the other rulings that I've made a year and a half ago," namely the ruling on the Rule 219 sanctions.

¶ 29                          VI. July 10, 2018 Hearing on Attorney Fees

¶ 30    On July 10, 2018—two years after the court ordered the Rule 219 sanctions—the court held a hearing "to determine what costs and fees, if any, will be awarded to Indeck, and the reasonableness of those fees." The court repeatedly made clear that it was not willing to revisit its dismissal or sanctions for the original discovery violations. Counsel for Pro Sapiens tried to characterize the proceedings on that day as "a combined 137 and 219 motion," but the court emphasized that the Rule 219 sanctions order was no longer subject to argument, that the only question regarding the Rule 219 order at this point was the amount of fees to award. The court repeatedly reminded counsel that the court had patiently accommodated him, moving the trial date and granting him more time to file a written response and obtain expert testimony, yet counsel had failed to file a response of any kind or even show up for the hearing two years ago.

¶ 31    Jacob testified at this hearing. The court stopped counsel's attempt to elicit testimony from Jacob as to whether he destroyed e-mails and obstructed discovery:

> "The only issue that we're dealing with right now, and it's been the case since July of 2016, is the amount of attorneys' fees that would be awarded, if any, as a result of the 219 motion. And I know you want to revisit your failure to present any evidence whatsoever to rebut their motion. You had every opportunity. This is not that opportunity. That ship, as I've said before, has sailed."

¶ 32                          VII. July 25, 2018 Fee Order

¶ 33    On July 25, 2018, the court granted Indeck's fee petition and awarded it $205,489 in attorney fees and $39,544.76 in expert costs.

¶ 34                    VIII. July 10, 2018 Motion for "Clarification"

¶ 35    On July 26, 2018, Indeck filed a "Motion to Suggest Scrivener's Corrections and for

Clarification" that purported to do two things: First, it sought correction of several minor factual

errors in the court's July 25 order. Second, the motion requested "clarification" as to whether the

court intended to award Indeck some $30,000 in attorney fees for work performed on behalf of

Indeck by attorneys other than Indeck's counsel of record.

¶ 36    On August 16, 2018, the court entered an amended order, which (1) made minor clerical

changes and (2) clarified that the court's July 25, 2018, order did *not* include an award for the

amount of fees that Indeck paid to law firms other than its counsel of record.

¶ 37                    IX. The Appeal and Proceedings Before This Court

¶ 38    On September 17, 2018, Pro Sapiens and Jacob filed a notice of appeal. Of note, the

notice of appeal (1) listed Jacob and Pro Sapiens as separate appellants, (2) was electronically

signed by Jacob, and (3) inserted Jacob into the case caption. The notice of appeal purported to

appeal the circuit court's orders dated April 7 (allowing counsel for Pro Sapiens to withdraw

from case), July 20, 2016 (dismissing cause and ordering sanctions against Pro Sapiens and

Jacob), and August 16, 2018 (amended order regarding award of costs and attorney fees).

¶ 39    On October 2, 2012, Pro Sapiens and Jacob filed a joint docketing statement. In that

document, Jacob twice represented that he was acting as Pro Sapiens's counsel, even though

Jacob is not an attorney.

¶ 40    Indeck moved to dismiss the appeal. First, Indeck argued that the entire appeal was

untimely. Second, Indeck claimed that, at least insofar as Pro Sapiens was concerned, the notice

of appeal was a legal nullity because Jacob, as a non-lawyer, could not legally file a notice of

appeal on behalf of Pro Sapiens. As a final parting shot, Indeck requested that we award it the costs it incurred for bringing the motion to dismiss.

¶ 41    On October 19, 2018, Jacob and Pro Sapiens filed a response to Indeck's motion to dismiss. With respect to Jacob's standing to prosecute Pro Sapiens's appeal, Jacob argued:

> "Appellant Pro Sapiens is a sole proprietorship therefore it can be represented Pro Se by Emmanuel Jacob.
>
> ***
>
> It is also alleged that Emmanuel Jacob is the owner of Pro Sapiens LLC. Pro Sapiens is a sole proprietorship, hence, it is perfectly legal for Emmanuel Jacob to represent himself and Pro Sapiens as Pro Se."

¶ 42    On October 30, 2018, we dismissed the appeal as to Pro Sapiens and ordered that Indeck's "motion to dismiss as to [Jacob] and for additional sanctions [be] taken with the case."

¶ 43    On November 20, 2018, Jacob and Pro Sapiens filed a motion to reconsider our order partially dismissing the appeal. In pertinent part, the motion argued:

> "Plaintiff Appellant Pro Sapiens and Emmanuel Jacob respectfully states that this Court should allow Emmanuel Jacob to represent, Pro Se, Pro Sapiens LLC and himself and to that effect cites: *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 36 (2005). The Court found and stated: 'We hold that where the defendant lenders prepared the subject loan documents, through their employees, they did not engage in the unauthorized practice of law by charging a fee.'
>
> Therefore, Emmanuel Jacob, as an agent of Pro Sapiens is not engaged in an unauthorized practice of law by self-representing himself and by inference Pro Sapiens.

10

A 'Limited Liability Company is not a Corporation. Single Member LLC operates like a Sole Proprietor with an additional layer of protection against liabilities attributed to the LLC and therefore the Single Member CAN appear in Court to represent the LLC just as a Sole Proprietor CAN represent himself in Pro Se.' "

¶ 44    Indeck's response to the motion to reconsider highlighted a latent falsehood inherent in Jacob's argument that he can represent Pro Sapiens: At his deposition in August 2015, Jacob testified that the only person who owned a membership interest in Pro Sapiens was his wife; now, Jacob, by suggesting he could represent Pro Sapiens by analogizing its status to that of a sole proprietorship, was implicitly stating that he, not his wife, was the sole member of Pro Sapiens. Not only was that out of step with Jacob's deposition testimony—it was inconsistent with records from the State of Arizona (Pro Sapiens's state of organization), which reflected that Jacob was not even a manager of Pro Sapiens. Based on the apparent falsehood underpinning Jacob's claim of entitlement to represent Pro Sapiens, Indeck included in its responses a request for costs it incurred in filing its motion to dismiss.

¶ 45    On November 29, 2018, we denied Jacob's and Pro Sapiens's motion to reconsider and directed that Indeck's request for costs be taken with the case.

¶ 46                              ANALYSIS

¶ 47    On appeal, Jacob challenges the trial court's order granting Mr. Landis leave to withdraw and challenges various aspects of the court's grant of Rule 219 sanctions. But before we can reach those issues, we must address Indeck's remaining challenge to our jurisdiction.

¶ 48                                 I

11

¶ 49    As noted, we already dismissed Pro Sapiens's appeal. But Indeck claims that even Jacob's appeal in his individual capacity is untimely, and thus we lack jurisdiction over his appeal as well.

¶ 50    Generally speaking, a notice of appeal must be filed within 30 days of (1) "the entry of the final judgment appealed from" or (2) resolution of a timely filed post-judgment motion. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). A timely notice of appeal is mandatory and jurisdictional. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). Absent a timely notice of appeal, our only recourse is to dismiss the appeal for lack of jurisdiction. See *Vines v. Village of Flossmoor*, 2017 IL App (1st) 163339, ¶ 9.

¶ 51    In Indeck's view, the court's July 25, 2018, order fixing the amount of Rule 219 sanctions was the "final order" in this case that marked the beginning of Jacob's 30-day window to file a notice of appeal. Jacob's notice of appeal, dated September 17, 2018, was thus untimely.

¶ 52    Jacob says that his notice of appeal was not due until September 16, 2018, because that date was 30 days after the court disposed of Indeck's motion for "clarification," which Jacob views as a "postjudgment motion" under Rule 303(a)(1). Because September 16 was a Sunday, his notice of appeal was thus due September 17—the day he filed it.

¶ 53    Not every motion that is filed after a court has entered judgment qualifies as a "post-judgment motion" under Rule 303(a)(1). A postjudgment motion extends the time for filing a notice of appeal under Rule 303(a)(1) only when it "seeks rehearing, retrial, modification or vacation of the judgment, or other similar relief." *Heiden v. DNA Diagnostics Center, Inc.*, 396 Ill. App. 3d 135, 138 (2009). The motion's title doesn't matter; we care about what the motion says, not the label affixed to it. See *Shempf v. Chaviano*, 2019 IL App (1st) 173146, ¶¶ 35-36.

¶ 54    We briefly discussed Indeck's "Motion to Suggest Scrivener's Corrections and for Clarification" above. We recite the relevant substantive comments here:

> "3. Indeck also respectfully requests clarification on the attorneys' fees the Court awarded. Indeck does not quibble with the Court's ruling that plaintiff 'should properly pay defendant's attorney fees and expert fees commencing' at the time it initially ordered a forensic review in its February 19, 2015 Order. (Order, p. 3.) The Court's award of $205,489 in attorney fees reflects the fees that Indeck's counsel of record incurred after that date. *This award, however, does not include other attorneys' fees Indeck incurred after that date with firms other than counsel of record that it was required to retain.* These fees total $30,085.15.

> 4. Because these are also attorneys' fees Indeck incurred after February 19, 2015, Indeck requests clarification of whether the Court's July 25, 2018 Order extended to them as well." (Emphasis added.)

¶ 55    This motion went far beyond suggesting correction of minor typos and mislabelled dates. The motion asked the court to increase the amount of attorney fees it was awarding by approximately $30,000. And it sought to include other attorneys, who had not themselves petitioned for fees, in the fee award. If that was not a motion seeking a "modification" of the judgment (see *Heiden*, 396 Ill. App. 3d at 138), it's hard to imagine what would be. The motion was clearly a motion directed against the judgment, a "postjudgment motion" under Rule 303(a)(1).

¶ 56    Indeck claims that the trial court made no substantive change to its original order. True, but that's only because the court denied the motion. The salient point is that Indeck *requested* material modifications to the original fee award, both in amount and kind.

¶ 57    Indeck also suggests that "[b]ecause fees incurred from other firms fell within the terms of the trial court's order but were not included in the total attorneys' fees granted on July 25, 2018," its motion was really just a motion to clarify. We disagree. The court's July 25 order made no mention whatsoever of "fees incurred from other firms." The motion to "clarify" sought to expand the class of attorneys entitled to their fees.

¶ 58    Because Indeck's "Motion to Suggest Scrivener's Corrections and for Clarification" qualified as a post-judgment motion under Rule 303(a)(1), the deadline for Jacob to file his notice of appeal did not begin running until the court disposed of Indeck's motion to clarify, and it did not expire until 30 days afterward. The circuit court resolved Indeck's motion on August 16, 2018. That means Jacob's notice of appeal was due on September 16, 2018. As September 16 fell on a Sunday, Jacob's notice of appeal was due the next business day, September 17—the day Jacob filed it. This appeal is timely. We thus turn to the merits.

¶ 59                                   II

¶ 60    Jacob raises several arguments that pertain not to him, personally, but to Pro Sapiens. He says the trial court erred in allowing Pro Sapiens's first lawyer to withdraw from the case and that the court erred in dismissing the case and imposing monetary sanctions against Pro Sapiens.

¶ 61    We have no jurisdiction to consider these arguments. We already dismissed Pro Sapiens's appeal because there *was* no appeal; a proper notice of appeal was never filed. That means that any claims belonging to Pro Sapiens were dismissed, too; it would turn the rules on their head to say that a party can fail to appeal but that its claims could be heard if raised by someone else.

¶ 62    Jacob is obviously closely tied to Pro Sapiens, either its only employee or one of two employees (the other being his wife). Indeck has provided information suggesting that his wife is the only corporate officer. In any event, the corporation known as Pro Sapiens, LLC, is the only

party plaintiff in this case. A corporation is a legal entity that exists separate and distinct from its shareholders and officers, even if the corporation consists of only one or two shareholders. *In re Rehabilitation of Centaur Insurance Co.*, 238 Ill. App. 3d 292, 299 (1992), *aff'd*, 158 Ill. 2d 166 (1994); *Gallagher v. Reconco Builders, Inc.*, 91 Ill. App. 3d 999, 1004 (1980).

¶ 63　The underlying lawsuit belonged only to Pro Sapiens. So the trial court's dismissal of the lawsuit and the monetary sanctions imposed against it are claims belonging to Pro Sapiens and *only* Pro Sapiens. As Pro Sapiens did not appeal, we lack jurisdiction to consider claims that the trial court erred in allowing Pro Sapiens's first lawyer to withdraw or that the court erred in dismissing the case or sanctioning Pro Sapiens.

¶ 64　　　　　　　　　　　　　　　III

¶ 65　Jacob does have standing, obviously, to appeal the award of monetary sanctions against him personally. And we have already found his appeal to be timely. So this issue, and only this issue, is properly before us.

¶ 66　　　　　　　　　　　　　　　A

¶ 67　Jacob claims that he "was not a party to the lawsuit and has never been properly served by Defendant." Both of those things are true. Jacob was never himself a party to this lawsuit. No summons was ever issued to Jacob, no counterclaim ever filed naming Jacob in his individual capacity. And no subpoena was ever issued to Jacob at any time in this case.

¶ 68　That includes in the context of the motion for Rule 219 sanctions, the motion that spawned the order under review. Indeck's notice of motion for Rule 219 sanctions included only a notice sent to counsel for the party of record, Pro Sapiens. Jacob, individually was not given notice specifically of the motion. And critically, he was not subpoenaed in his individual capacity (or otherwise) to appear for that hearing. None of this is disputed.

¶ 69    Because he was never served with a subpoena or any other process in his individual capacity, Jacobs says the trial court never acquired personal jurisdiction over him. The order of sanctions against him personally is thus void and of no effect. Whether he is correct is a question of law we review *de novo*. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17 (whether court obtained personal jurisdiction over party is reviewed *de novo*).

¶ 70    Personal jurisdiction refers to the circuit court's power to exercise adjudicatory authority over particular individuals. *MI Management, LLC v. Proteus Holdings, LLC*, 2018 IL App (1st) 160972, ¶ 36. It requires three things: " '(1) proper service of process, (2) jurisdiction under the Illinois long-arm statute [citation], and (3) due process under both the United States and Illinois Constitutions.' " *Id.* (quoting *McNally v. Morrison*, 408 Ill. App. 3d 248, 254-55 (2011)).

¶ 71    The parties argue about the second and third components, whether Jacob's activity was sufficient to bring him within the Illinois long-arm statute—that is, whether he had sufficient "minimum contacts" to submit to the jurisdiction of the Illinois courts. See *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. ___, ___, 137 S. Ct. 1773, 1779 (2017); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). But that's not the problem here.

¶ 72    The concern here is the first requirement of personal jurisdiction—service of process. Process is the means by which a court acquires jurisdiction over the person. *Coyne v. OSF Healthcare System*, 332 Ill. App. 3d 717, 719 (2002); *In re A.M.*, 128 Ill. App. 3d 100, 103 (1984); *Whitley v. Lutheran Hospital*, 73 Ill. App. 3d 763, 766 (1979). Absent waiver, which we will discuss later, "personal jurisdiction can be acquired only by service of process in the manner directed by statute." *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986).

¶ 73    No judgment against a party is valid unless the court has personal jurisdiction over that party. *Id.*; see *In re Dar. C.*, 2011 IL 111083, ¶ 60 ("When a trial court fails to obtain personal jurisdiction over a litigant, it is deprived of the authority or power to impose judgment against the litigant."). And because service of process is indispensable to personal jurisdiction, "[a] judgment rendered without service of process," absent waiver of service, "is void regardless of whether the defendant had actual knowledge of the proceedings." *Thill*, 113 Ill. 2d at 308.

¶ 74    These requirements emanate from the due process clause and its long-standing, fundamental principle " 'that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); see also *Mitchell*, 2014 IL 116311, ¶ 28 (requiring personal jurisdiction is "based on the due process concept of allowing the defendant his day in court before entering judgment against him").

¶ 75    The "authority-asserting measure" (*Murphy Brothers*, 526 U.S. at 350) by which a party acquires jurisdiction over a non-party like Jacob is service of a subpoena. *Coyne*, 332 Ill. App. 3d at 719; *Whitley*, 73 Ill. App. 3d at 766 ("Process, by which the court acquires power or jurisdiction over the person, can take the form of a summons [citation] or of a subpoena [citation]. *** It is the power acquired by service of subpoena that permits the court to compel discovery from non-party deponents."); Ill. S. Ct. R. 204(a)(3) (eff. July 1, 2014). Once a non-party is subpoenaed, that party is subject to the jurisdiction of the court. Any failure to comply

17

with that subpoena is tantamount to failure to comply with a court order. See Ill. S. Ct. R. 204(d) (eff. July 1, 2014). Indeed, the form subpoena that Indeck used in this case for other third-party discovery, from the clerk of the circuit court of Cook County, includes that language in bold and all-caps: "YOUR FAILURE TO RESPOND TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISHMENT FOR CONTEMPT OF THIS COURT."

¶ 76 Had Jacob been served with a subpoena at any time before or in connection with the motion for Rule 219 sanctions, the trial court would have acquired personal jurisdiction over him. *Coyne*, 332 Ill. App. 3d at 719; *Whitley*, 73 Ill. App. 3d at 766. But absent the service of process on Jacob via subpoena, the trial court never had personal jurisdiction over him. *Thill*, 113 Ill. 2d at 308. The resulting order of sanctions, at least as it concerned Jacob in his individual capacity, was thus void. *Id.*; *In re Dar. C.*, 2011 IL 111083, ¶ 60.

¶ 77 We have little doubt that Jacob was fully aware of Indeck's motion for Rule 219 sanctions. But that makes no difference. As noted earlier, mere knowledge of a lawsuit or an antagonistic motion is no substitute for service of process. See *Thill*, 113 Ill. 2d at 308 (judgment rendered against individual without service of process "is void regardless of whether the defendant had actual knowledge of the proceedings"). Indeed, Illinois sets up a framework whereby litigants may appear in court for the limited purpose of contesting personal jurisdiction, what used to be called a "special appearance." See 735 ILCS 5/2-301 (West 2014). Obviously, a litigant could only appear in court if it knew of the pending action in the first instance.

¶ 78 We are likewise well aware that Jacob is essentially the driving force behind Pro Sapiens. He referred to himself in this proceeding as the "owner" of Pro Sapiens. Indeck cites government records in Arizona suggesting that he's not an officer at all but a mere employee.

¶ 79     But it makes no difference whether Jacob is the sole shareholder or a mere employee. The only party-plaintiff was the corporate entity, Pro Sapiens; we repeat that a corporation is a legal entity distinct from its shareholders, even if there are only one or two shareholders. *In re Rehabilitation of Centaur Insurance Co.*, 238 Ill. App. 3d at 299; *Gallagher*, 91 Ill. App. 3d at 1004. Indeck never argued that Jacob and Pro Sapiens were one and the same and certainly never served Jacob with any formal process to indicate it would do so, which due process would require. See, *e.g.*, *Life Technologies Corp. v. Govindaraj*, 931 F.3d 259, 265 (4th Cir. 2019) (individual officer of corporation could be not held liable for acts of corporation when he was not served with process; "[i]n light of these due process limitations, a judgment entered against a corporation that is determined to be the alter ego of a non-party establishes personal liability of the non-party only if the non-party is notified that such liability may be imposed and is given fair opportunity to defend the action resulting in the judgment").

¶ 80     And Indeck treated Jacob as an employee or officer of Pro Sapiens during the litigation. It did not subpoena him for deposition but, instead, issued a notice of deposition to the corporation plaintiff, Pro Sapiens, to produce the employee subject to its control, Jacob—which is typically how lawyers request depositions from an opposing party's employees. See Ill. S. Ct. R. 204(a)(3) (eff. July 1, 2014) (notice of deposition "sufficient," in lieu of subpoena, to compel deposition of party's employee or officer). When it sought to compel documents and e-mails in Jacob's possession, it issued all notices (and motions to compel) to Pro Sapiens, not Jacob individually— which, again, is the standard course of action. All of that made sense, because a corporate party is deemed to be in control of its employees and officers, and thus the actions of those employees and officers are compelled by compelling the party to the lawsuit—the corporation.

¶ 81   Consider, for example, a related context in which we have discussed due process concerns involving orders directed against a corporate party that involved the actions of the party's employees and officers. In *Pickering v. Owens-Corning Fiberglas Corp.*, 265 Ill. App. 3d 806, 813 (1994), the plaintiff filed a notice under Illinois Supreme Court Rule 237 (eff. Nov. 1, 1978) to the defendant to produce certain of its top corporate officers at trial. The defendant refused, and the court imposed severe sanctions on the defendant, including striking its pleadings, deeming the allegations of the complaint admitted, and limiting the subject matters the defendant could contest at trial. *Pickering*, 265 Ill. App 3d at 814-15.

¶ 82   On appeal, the defendant argued that forcing these corporate officers to appear at trial violated their due process rights because the trial court had no personal jurisdiction over them— it only had jurisdiction over the corporate defendant. *Id.* at 819. We agreed that the trial court lacked personal jurisdiction over those individual officers, but we found no due process violation because the trial court's sanctions were only directed against the corporate defendant:

> "We emphasize that the circuit court is not attempting to compel the noticed individuals to do anything and that no sanctions are imposed against those individuals. It is only the corporate defendant, who has already conceded the circuit court's personal jurisdiction over it, which the court is attempting to compel, and it is only against the corporate defendant that sanctions are imposed. The circuit court has no, and asserts no, personal jurisdiction over the noticed individuals, but the court asserts jurisdiction only over the corporate defendant. No principles of due process are violated in this context." *Id.* at 820.

See also *Johnson v. Owens-Corning Fiberglas Corp.*, 233 Ill. App. 3d 425, 434 (1992) ("As long as the order is directed at the corporate defendant rather than the individual employees and

directors, principles of due process are not violated, and a court may sanction a corporate defendant for its failure to produce its employees.").

¶ 83   Our reasoning here squares up with those decisions. We found no due process concerns in that context only because the court wasn't sanctioning the individual officers or employees over whom the court lacked personal jurisdiction; the court sanctioned the corporate party over which the trial court clearly possessed jurisdiction. It was for that reason and only that reason that no due process violation was found.

¶ 84   Here, of course, Jacob, an employee (or perhaps an officer, or both) of the corporate plaintiff, Pro Sapiens, *was* personally sanctioned—to the tune of almost a quarter of a million dollars. Because the trial court never acquired jurisdiction over Jacob before doing so, due process concerns are directly implicated.

¶ 85   If this feels like some unfair technicality, consider the consequences of a different outcome. Here, Jacob was closely tied with Pro Sapiens. But consider other contexts, in which an employee of a corporate party to a lawsuit is engaged in discovery issues—gathering documents, assisting with interrogatories. Some corporations, of course, are enormous. What about an employee who signs answers to interrogatories, or gathers documents, who is suddenly accused of wrongdoing in that regard to the extent that the opposing party moves for sanctions against that employee personally? If a mere notice of motion to the corporate party's attorney suffices, how can we be certain that the employee—who is not represented by that attorney—will ever learn that someone is trying to reach his or her personal assets in that motion? And it could well be the case that the corporate party's interests and the employees' interests could become antagonistic, with fingers pointed at each other. How can the employee's rights be protected?

¶ 86    By giving that employee proper service of process. That is precisely why the due process clause requires that, before a judgment such as a sanctions order is entered against an individual, that individual is entitled to formal service of process—so that we can be certain that the individual has been given notice of the attempt to impose personal liability on him or her, along with an opportunity to answer the claims. See *Ortiz*, 527 U.S. at 846; *Murphy Brothers*, 526 U.S. at 350; *Mitchell*, 2014 IL 116311, ¶ 28.

¶ 87    In sum, because Jacob, a non-party to this case, was never officially served with process via a subpoena, the trial court never acquired personal jurisdiction over him. We have no choice but to vacate that portion of the court's sanction order as void for lack of jurisdiction.

¶ 88                                      B

¶ 89    Indeck claims that Jacob voluntarily submitted to the jurisdiction of Cook County, and thus waived any objection to personal jurisdiction, by appearing for depositions and participating in discovery and committing his various discovery violations—the deletion of e-mails, the false affidavits, etc. That's not waiver. It might be relevant to a "minimum contacts" discussion under the umbrella of personal jurisdiction, but it's not waiver.

¶ 90    Waiver of personal jurisdiction occurs when a party files a general appearance in a case without immediately objecting to personal jurisdiction. See 735 ILCS 5/2-301(a), (a-5) (West 2014). If an individual who is summoned or subpoenaed (usually this occurs in the context of a summons to a party named in the lawsuit) appears in court and does not object to jurisdiction, that individual is deemed to have submitted to the jurisdiction of the court. *Id.*; see *Mitchell*, 2014 IL 116311, ¶ 34.

¶ 91    As we have noted at great length above, personal jurisdiction requires, among other things, service of process. Jacob was never served with process. Nobody even *tried* to serve him with process. There was nothing to waive.

¶ 92    It is true, as we also noted above, that Jacob did appear in court at the November 2017 hearing. See *supra* ¶¶ 25-28. But for several reasons, that act did not constitute waiver, either.

¶ 93    For one, there is no indication that Jacob was appearing there in his individual capacity, as opposed to appearing as the representative of the party-plaintiff, Pro Sapiens. Jacob never filed an appearance before that hearing (or at any time). Nor did the lawyer for Pro Sapiens, Mr. Utereras, file an appearance on his behalf.

¶ 94    Indeed, recall that, by the time of that hearing, the trial court had already imposed sanctions on Jacob personally some 18 months earlier and had already denied a motion for reconsideration filed by Pro Sapiens. By that point in November 2017, the court had made it abundantly clear that it would not revisit that ruling. And the court emphasized as much to Jacob, at that November 2017 hearing, when Jacob tried to discuss that topic on the merits. We find no basis to conclude that Jacob's mere attendance at that hearing waived his objection to personal jurisdiction. See *In re A.M.*, 128 Ill. App. 3d at 103 (in proceedings against mothers for violating School Code by failing to ensure their children's attendance at school, order of contempt against children for failing to attend school was void, as children, while present at all times in court and aware of order to attend school, were never "served with process" and, thus, "the circuit court was without jurisdiction to enter the orders").

¶ 95    Second and related, the purpose of the November 2017 hearing was to discuss not the Rule 219 sanctions but the motion for *Rule 137* sanctions for filing a frivolous lawsuit. That motion was directed at Pro Sapiens and its first lawyer, Mr. Landis, not at Jacob personally. The

court had requested of Pro Sapiens's new lawyer, Mr. Utreras, that he bring Jacob to this hearing so Jacob could hear, straight from the court, that Pro Sapiens was facing sanctions that could amount to attorney fees dating back to the onset of the case—nearly a half-million dollars. By then, in other words, the topic of Rule 219 sanctions was off the table entirely.

¶ 96    Third and most importantly, even if Jacob's appearance at the November 2017 hearing constituted his consent to jurisdiction, and thus a waiver, our decision would be the same. Personal jurisdiction can be waived, but it can only be waived going forward. It can't be waived retroactively. *Mitchell*, 2014 IL 116311, ¶ 43 ("A party who submits to the court's jurisdiction does so only prospectively and the appearance does not retroactively validate orders entered prior to that date." (internal quotation marks omitted)). Thus, even if we agreed that Jacob waived his objection to personal jurisdiction in November 2017 (we do not), it would not somehow vest the court with personal jurisdiction over Jacob back in May 2016, when the motion for Rule 219 was first filed and served on counsel for Pro Sapiens, or in July and August 2016, when the court imposed the sanctions and denied the motion to reconsider.

¶ 97    Finally, Indeck cites *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 52, where we affirmed a sanctions award under Rule 219 against an individual attorney, O'Callaghan, even though the notice of the motion for sanctions was served only on counsel for the corporate defendant—O'Callaghan's law firm, Joseph Michael Callaghan, P.C. The difference there, however, is that O'Callaghan had previously been a part of that litigation as an individual defendant, and he had been represented by the same counsel as the law-firm defendant. *Id.* So the notice was sent to the only person to whom it *could* be sent to serve notice on O'Callaghan individually—the attorney who had previously appeared in that litigation on his behalf.

¶ 98    Here, in contrast, Jacob was never a party to this action. He never appeared personally, and no attorney ever filed an appearance on his behalf. *Dolan* is thus distinguishable, and we leave for another day whether its reasoning is compatible with the principles we have discussed above.

¶ 99                                        CONCLUSION

¶ 100   For all of these reasons, the order of Rule 219 sanctions, insofar as it applied to Jacob personally, is vacated. The appeal is dismissed as to all other claims. We remand this cause for any further proceedings.

¶ 101   In light of our disposition, we decline Indeck's request to impose additional sanctions on Jacob in this appeal.

¶ 102   Vacated in part and dismissed in part; cause remanded.

---

**No. 1-18-2019**

---

| | |
|---|---|
| **Cite as:** | *Pro Sapiens, LLC v. Indeck Power Equipment Co.*, 2019 IL App (1st) 182019 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-L-5730; the Hon. Patrick J. Sherlock, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Emmanuel Jacob, of Phoenix, Arizona, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Steven J. Roeder, Thomas D. Gipson, and Adrian D. Mapes-Riordan, of Roeder Law Offices LLC, of Chicago, for appellee. |

---