# Illinois Official Reports

## Appellate Court

---

### *Grant v. Rancour*, 2020 IL App (2d) 190802

---

| | |
|---|---|
| Appellate Court Caption | ERIC K. GRANT and CHRISTINE GRANT, f/k/a Christine Cherkes, Plaintiffs-Appellees, v. ALLISON RANCOUR, FREDRICK RANCOUR, and PAMELA RANCOUR, Defendants (Lucas, Olness & Associates, Ltd., Contemnor-Appellant). |
| District & No. | Second District<br>No. 2-19-0802 |
| Filed | June 12, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 15-L363; the Hon. James R. Murphy, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part.<br>Cause remanded. |
| Counsel on Appeal | Andrea E. Olness and Mia Lucas, of Lucas, Olness & Associates, Ltd., of Woodstock, for appellant.<br><br>Michael C. Holy and Carl M. Schultz, of Holy & Schultz, LLC, of Oakbrook Terrace, for appellees. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Jorgensen and Schostok concurred in the judgment and opinion.


**OPINION**

¶ 1     Contemnor, Lucas, Olness & Associates, Ltd. (Lucas), counsel for defendant Allison Rancour, appeals the trial court's order finding Lucas in friendly civil contempt for failing to comply with its order to produce documents during discovery. We affirm in part and vacate in part.

¶ 2                              I. BACKGROUND

¶ 3     On August 20, 2013, defendant turned her vehicle into the path of the vehicle occupied by plaintiffs, Eric Grant and Christine Grant. On August 11, 2015, plaintiffs filed a five-count complaint alleging negligence by defendant, as well as negligent-entrustment and agency claims against her parents, Fredrick Rancour and Pamela Rancour. On August 7, 2017, the parties stipulated that (1) defendant negligently caused the accident; (2) plaintiffs' medical bills incurred on the day of the accident were reasonable, necessary, and causally related to the accident; and (3) the claims against Fredrick and Pamela would be dismissed with prejudice. Defendant continued to deny that she was liable for any of plaintiffs' medical bills beyond those incurred on the day of the accident. Discovery proceeded as to the cause and extent of plaintiffs' claimed injuries.

¶ 4     On December 28, 2018, defendant disclosed two "controlled" expert witnesses, Drs. Benjamin Goldberg and Michael Musacchio, when she served plaintiffs with what she characterized as "Defendant's Supplemental Rule 213(f) Disclosures." Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) requires a party to disclose the identity and other relevant information of "Controlled Expert Witnesses." On December 31, 2018, plaintiffs responded by serving defendant with supplemental interrogatories seeking, *inter alia*, information regarding Goldberg's work as a controlled expert on behalf of (1) Lucas; (2) defendant's insurer, State Farm Insurance Company (State Farm); and (3) State Farm's in-house counsel, Bruce Farrel Dorn & Associates (Bruce Farrel). Plaintiffs sought the names of the cases on which Goldberg consulted during the previous five years for each of these entities. For each case, plaintiffs requested documentation showing (1) whether Goldberg treated the patient or simply reviewed medical records, (2) whether he testified, either at a deposition or at a trial, and (3) whether he was retained on behalf of the plaintiffs or the defendants. Lucas responded to the supplemental interrogatories as to Goldberg's consulting work for Lucas but not as to Goldberg's work on behalf of State Farm or Bruce Farrel. On January 7, 2019, plaintiffs filed a motion to compel supplemental written discovery concerning Goldberg. On January 22, 2019, plaintiffs filed a similar motion to compel supplemental written discovery as to Musacchio. Both motions alleged that defendant provided incomplete and deficient answers, because they failed to fully disclose information about Goldberg's and Musacchio's expert witness work for State Farm outside of what they did for Lucas.

¶ 5     On January 25, 2019, at the hearing on the motion to compel supplemental discovery as to Goldberg, Lucas argued that it could not provide the requested discovery, because it was State

Farm's outside counsel and had no control over State Farm or Bruce Farrel. Lucas acknowledged that plaintiffs were free to subpoena State Farm and Bruce Farrel directly.

¶ 6 On February 25, 2019, the trial court granted plaintiffs' motions in part, subject to conditions. In its oral ruling, the court directed:

"[T]he insurer, *State Farm, shall respond in or defendant shall respond for State Farm in similar manner* *** to the supplemental interrogatories with a list of cases, case number and county, firm hired and amount of compensation paid in such other cases that are separate from [Lucas]. Other firms, including Bruce Farrel firm, if those members are employees of State Farm, they're included in this order also." (Emphasis added.)

In its written order, the court specified: "Defendant, her attorneys and insurer shall fully respond to interrogatory and production requests" regarding the legal and consulting work performed by Goldberg and Musacchio for Lucas, State Farm, and Bruce Farrel between 2016 and 2019, along with disclosures of the compensation received for such work. The court directed Goldberg and Musacchio to indicate, if possible, which portion of their legal and consulting income was related to work on behalf of plaintiffs versus defendants. The court ordered that, if that was not possible, Goldberg and Musacchio must identify the percentage of their overall legal and consulting income earned from State Farm during those years. The court further ordered that "State Farm shall respond in similar manner" to the supplemental interrogatories regarding Goldberg and Musacchio with a list of cases, attorneys hired, and compensation paid. In paragraph six of its written order, the court noted: "It is not necessary to separately subpoena State Farm (or Bruce Farrell [*sic*] Firm, provided said firm members are employees of State Farm)." The record contains a letter from Bruce Farrel to plaintiffs' attorney that lists all of its attorneys as "employees" of the "Law Department" at State Farm. Finally, the court ordered Goldberg and Musacchio to be presented, at defendant's expense, for supplemental depositions relating to the newly disclosed information.

¶ 7 In her amended answers to the supplemental interrogatories, defendant refused to provide the requested information from State Farm and Bruce Farrel, repeating her previous objections:

"In further answering, Lucas, Olness & Associates, Ltd. and its predecessor law firm, Lucas & Associates, Ltd. is outside counsel, not in-house counsel for, nor an employee of, State Farm Insurance. If Plaintiffs seek documents for the law firm of Bruce, Farrel, Dorn & Associates or State Farm Insurance, Plaintiffs should issue subpoenas to these entities, in accordance with paragraph 6 of the Court's Order of February 25, 2019."

¶ 8 On March 26, 2019, plaintiffs filed a motion for sanctions, alleging that defendant willfully refused to comply with and deliberately ignored the February 25 order. Defendant answered by repeating that Lucas was neither an employee of nor in-house counsel for State Farm, that State Farm and Bruce Farrel were nonparties, and that the proper procedure to procure documents from nonparties was through a subpoena. Defendant interpreted the court's order to exclude Lucas from disclosing information possessed by State Farm or Bruce Farrel, because Lucas was not an employee of State Farm: "The Court's order indicates a recognition that a separate subpoena would be necessary if a law firm was not an employee of State Farm Insurance, presumably to confer jurisdiction in the event of non-compliance with the subpoena."

¶ 9 At the hearing on the motion for sanctions, defendant argued that a reasonable interpretation of the February 25 order was that nonemployees of State Farm would have to be subpoenaed. On July 3, 2019, the court ruled orally on the motion for sanctions:

> "I have to agree with plaintiff[s] that the order and the other arguments were clear [in] that paragraph 6 of my order as to say that the insurer may have knowledge of these two expert witnesses and their other cases, and so the insurer shall give that information as well.
>
> Certainly, they are a nonparty, but all of the law on Rule 216 and Rule 201, *et seq.*, talk about the knowledge of the attorneys, the insurers, and the client. So that was the basis for the order.
>
> It's clear that the parenthetical information about Bruce Farrel Dorn Law Firm if they are employees of State Farm are also State Farm. So they are fair game too for that information. So that was not provided.
>
> I don't think there is a reasonable argument for not following that; and so therefore, I find that there is a reason for sanctions."

¶ 10 On July 17, 2019, the court instructed plaintiffs' attorney to file a petition for fees and costs relating to defendant's "deliberate abuse of the discovery rule." The court declined to bar Goldberg and Musacchio as witnesses, but it commented that it would entertain the possibility of giving an "adverse inference" jury instruction at trial. The court gave defendant until July 25, 2019, to either produce the records, submit an affidavit stating that the records do not exist, or settle the case.

¶ 11 On August 16, 2019, the court heard arguments on whether defendant had cured the sanctions order. Plaintiffs conceded that defendant had tendered two tax identification number documents (collectively, TIN reports). The first was a four-page spreadsheet from State Farm with data from 2016 through 2019. That spreadsheet contained a tax identification number and columns indicating "date issued," "draft number," "pay code," "COV," "LOB," "tax state," and "payment amount." The last page of the spreadsheet listed a "total paid" of $136,466.13, "total claims" of 17, and "total transactions" of 36. None of the terms were defined or otherwise explained. The second document was a three-page spreadsheet, also from State Farm, with data from 2017 through 2019. This document included a tax identification number and the same column headings as the other spreadsheet. The totals on the final page were "total paid $25,374.50, total claims 8, [and] total transactions 14." Neither spreadsheet identified a particular person or entity with which the data corresponded, apart from the tax identification numbers.

¶ 12 Plaintiffs argued that the TIN reports did not address the court's sanctions order. Plaintiffs emphasized that the TIN reports did not connect the tax identification numbers to Goldberg or Musacchio and that defendant would not stipulate as to the documents' foundations. Moreover, plaintiffs argued that the TIN reports suggested that there were more cases associated with Goldberg and Musacchio than had previously been disclosed. According to plaintiffs, defendant had not produced any documents associated with those additional cases, so defendant was not in compliance with the February 25 order. Additionally, plaintiffs argued that defendant had failed to present Goldberg or Musacchio for supplemental depositions, as required by the February 25 order.

¶ 13    Lucas informed the court that it did not request the TIN reports from State Farm but that State Farm voluntarily produced them. Lucas further expressed its understanding that the tax identification numbers listed on the TIN reports corresponded with Goldberg and Musacchio. Lucas represented that the TIN reports might reflect payments for Goldberg's and Musacchio's work as either treating physicians or retained experts. Lucas reiterated its argument that it had no control over State Farm or Bruce Farrel and that the parties' dispute could have been avoided had plaintiffs issued subpoenas to those entities. Lucas informed the court that it did not know if State Farm possessed underlying documents that supported the information on the TIN reports and that it had not asked for the reports. Moreover, Lucas opined that plaintiffs had "an awful lot of material to use for cross-examination of both witnesses." Lucas additionally confirmed that, if the court were inclined to find that the sanctions order had not been cured, it wished to be found in contempt of court to facilitate an immediate appeal.

¶ 14    The court entered a written order that same day, finding that defendant had not cured the conditions outlined in the sanctions order. As Lucas requested, the court found Lucas in contempt of court and ordered that it pay a fine of $25 per day for failing to comply with the February 25 and July 17, 2019, orders. Lucas timely appealed.

¶ 15                                        II. ANALYSIS

¶ 16    Lucas makes three arguments on appeal: (1) the trial court had no personal jurisdiction over State Farm or Bruce Farrel, and thus its order compelling the production of documents from those entities was void; (2) even if the discovery order was not void, the court abused its discretion in granting the motions to compel, and defendant complied in good faith with all discovery requirements under Illinois Supreme Court Rule 201 (eff. July 1, 2014); and (3) Lucas's noncompliance with the discovery order was based on a good-faith effort to secure an interpretation of an issue that would serve defendant and the court, and therefore, the contempt finding should not stand.[1]  Plaintiffs respond that (1) the sanctions and the contempt orders comported with existing Illinois Supreme Court rules and case law, (2) Lucas's personal jurisdiction argument is without merit because the court's order was directed not at State Farm, but at defendant and Lucas, and (3) Lucas should be sanctioned pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for bringing a frivolous appeal.

¶ 17                                  A. Personal Jurisdiction

¶ 18    Lucas first contends that the trial court's February 25, 2019, discovery order was "null and void" because it required production of information and documents from nonparties, over whom the court did not have personal jurisdiction. Therefore, Lucas argues, the July 17 sanctions order must also be declared null and void, as it was the result of the erroneous discovery order.

---

[1]In its reply brief, Lucas additionally requests that we strike plaintiffs' "Nature of the Case" section of their brief for its excessive length and argumentation, in violation of Illinois Supreme Court Rule 341(h)(2) (eff. May 25, 2018). We note that plaintiffs' nature-of-the-case section far exceeds Rule 341(h)(2)'s one-paragraph limitation and that it contains unnecessary argument. However, because these violations do not hinder our review, we decline to strike any portion of plaintiffs' brief, but we admonish plaintiffs that Illinois Supreme Court rules have the force of law and are not mere suggestions. *Morse v. Donati*, 2019 IL App (2d) 180328, ¶ 16.

- 5 -

¶ 19    As an initial matter, we note that discovery orders are not final orders and, therefore, not ordinarily appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). It is well settled, however, that discovery orders may be challenged through contempt proceedings. *Norskog*, 197 Ill. 2d at 69. Review of a finding of contempt necessarily requires review of the order upon which it is based. *Norskog*, 197 Ill. 2d at 69. In this case, the contempt order entered on August 16, 2019, was based upon the sanctions order of July 17, 2019, which in turn was based upon the discovery order of February 25, 2019. Accordingly, we have jurisdiction to review each of those orders through Lucas's challenge of the contempt order.

¶ 20    A discovery order is ordinarily reviewed for an abuse of discretion, but when the issue challenged is the trial court's application of the law to uncontroverted facts, the reviewing court may apply *de novo* review and determine the correctness of the ruling independent of the trial court's judgment. *Norskog*, 197 Ill. 2d at 70-71. There is no dispute that defendant and Lucas failed to comply with the court's discovery order. Lucas nevertheless attempts to justify its inaction by questioning whether the court had personal jurisdiction over State Farm and Bruce Farrel. Whether a court had personal jurisdiction is a question of law, which we review *de novo*. *Mugavero v. Kenzler*, 317 Ill. App. 3d 162, 164 (2000). If we determine that the court had personal jurisdiction over State Farm and Bruce Farrel, then the issue is resolved in favor of plaintiffs. However, if the court did not have personal jurisdiction over those nonparties, the next question we must ask is whether the court's order was directed at State Farm or Bruce Farrel, and we review the court's order *de novo*. See *People v. Ryan*, 259 Ill. App. 3d 611, 613 (1994) ("A trial court order is to be interpreted in its entirety, taking into consideration other parts of the record, including the pleadings, the motions before the court, and the issues to be decided. [Citations.] An order should be construed reasonably so as to give effect to the discernable intent of the court.").

¶ 21    Lucas correctly points out that personal jurisdiction refers to a court's power to exercise authority over an individual, which can be a person or an entity, such as a corporation. *Pro Sapiens, LLC v. Indeck Power Equipment Co.*, 2019 IL App (1st) 182019, ¶ 70; see also *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d 190, 199-200 (1981) (applying an *in personam* jurisdiction test to a corporate defendant). Absent waiver, which is not alleged here, personal jurisdiction may be acquired only by service of process in a manner directed by statute. *Pro Sapiens*, 2019 IL App (1st) 182019, ¶ 72. Process can take the form of a summons or of a subpoena, the latter of which confers power upon the trial court to compel discovery from nonparties. *Pro Sapiens*, 2019 IL App (1st) 182019, ¶ 75. Any judgment rendered against a party or a nonparty, absent service of process or waiver, is void. *Pro Sapiens*, 2019 IL App (1st) 182019, ¶¶ 73-76.

¶ 22    State Farm and Bruce Farrel are not parties to this action and have not appeared. Plaintiffs never attempted to bring State Farm or Bruce Farrel under the jurisdiction of the trial court by serving them with a summons or a subpoena. Therefore, the court did not have personal jurisdiction over State Farm or Bruce Farrel. To the extent that the court's discovery order was directed at State Farm or Bruce Farrel, the order would necessarily be void. The only remaining question on this issue, then, is whether the court's discovery order was directed at either State Farm or Bruce Farrel.

¶ 23    Lucas points us to paragraphs five and six of the February 25 discovery order, where the court directed:

"5. However, with respect to such other cases in which Drs. Musacchio and Goldberg have done legal/med consulting, *State Farm shall respond* in similar manner to Defendant's response #6 to Supplemental Interrogatories with a list of cases, case number and county, attorney/firm hired, and amount of compensation paid in such case. Reports or transcripts shall not be provided.

6. *It is not necessary to separately subpoena State Farm (or Bruce Farrell Firm*, provided said firm members are employees of State Farm), for the information provided in #5 above." (Emphases added.)

Lucas interprets this language as compelling State Farm and Bruce Farrel to produce information and documents. Lucas argues that the court had no authority to compel discovery from either entity and that the discovery order was void. Moreover, according to Lucas, neither defendant nor Lucas were employees of State Farm, so they had no power to compel State Farm to produce the information. Thus, Lucas argues, not only was the discovery order void, but the sanctions order that sprang from the discovery order was also void.

¶ 24    We disagree. Quite simply, the entirety of the court's order, as well as the court's comments from the bench on February 25 and July 3, the relief sought in the motions to compel, and the parties' arguments, show the clear and discernable intent of the court to direct its order at defendant, not at State Farm or Bruce Farrel. See *Ryan*, 259 Ill. App. 3d at 613.

¶ 25    In their memoranda filed prior to the hearing on the motions to compel, plaintiffs cited *Szczeblewski v. Gossett*, 342 Ill. App. 3d 344 (2003), and *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110 (2010). In *Szczeblewski*, the plaintiffs in an automobile negligence action were seeking to compel admissions during discovery. *Szczeblewski*, 342 Ill. App. 3d at 346. The *Szczeblewski* court determined that parties to a lawsuit have an obligation to make reasonable efforts in good faith to secure discovery responses from persons within their reasonable control, including their attorneys and their "insurance company investigators or representatives." *Szczeblewski*, 342 Ill. App. 3d at 349. *Oelze* followed *Szczeblewski*'s reasoning and explicitly noted that a party had access to information possessed by her insurer: "So defendant knew what her injuries were and, *with its access to its insurance company and the insurer's databases of claims and necessary treatments and expenses*, could make a pretty good guess at the reasonableness of the expenses and treatments claimed and contest those, if necessary." (Emphasis added.) *Oelze*, 401 Ill. App. 3d at 126. Plaintiffs here argued to the trial court that, in light of *Szczeblewski* and *Oelze*, defendant had knowledge of and control over the documents State Farm possessed and she should be required to provide answers based on that knowledge.

¶ 26    Lucas argues that *Szczeblewski* and *Oelze* are inapposite because their holdings are confined to requests to admit under Illinois Supreme Court Rule 216 (eff. July 1, 2014). Lucas contends that availing oneself of his or her attorney's or insurer's knowledge when responding to a request to admit is "vastly different" from compelling nonparties to produce information and documents without due process. Lucas's argument is unconvincing. Whether a party has control over his or her insurer does not vary according to the type of discovery request. To hold otherwise would mean that a party has reasonable control over records for the purposes of responding to a request to admit but lacks control over those same records when she is presented with a request to produce documents. Defendant is a party to this action, and she is required to make good-faith efforts to produce information over which she has reasonable control.

¶ 27    The trial court was aware of *Szczeblewski* and *Oelze*, and when it entered its discovery order it knew that information State Farm possessed should have been available as a matter of law. In the first paragraph of its February 25, 2019, order, the court granted in part plaintiffs' motions to compel. The relief sought in those motions to compel was to "Order Defendant," not State Farm or Bruce Farrel, to provide amended answers to the supplemental interrogatories. Throughout the order, the court detailed the type and source of the information it was requiring to be produced. The order clearly was directed at defendant, as can be seen in paragraph seven, where the court instructed: "Further responses by *Defendant* pursuant to this order shall be provided within 21 days." (Emphasis added.) Moreover, in its oral ruling, the court ordered that "defendant shall respond for State Farm" to the supplemental interrogatories. Thus, its oral ruling was consistent with its written order, which directed defendant to produce information.

¶ 28    Defendant neither filed a motion to reconsider the discovery order nor sought clarity from the court. She simply failed to take any action whatsoever to comply with the court's order.

¶ 29    In response to the court's questioning as to whether State Farm had additional documents to back up the information in the TIN reports, Lucas responded: "I don't know that. I was just provided these. As I said, I didn't ask for these." In response to plaintiffs' motion for sanctions, defendant argued that she complied with the court's discovery order because the order did not require either her or Lucas to produce the information outlined in the order unless plaintiffs first served a subpoena on State Farm. She based that argument on the parenthetical phrase in paragraph six of the discovery order, which read: "It is not necessary to separately subpoena State Farm (or Bruce Farrell Firm, provided said firm members are employees of State Farm)." According to defendant, despite its plain language to the contrary, paragraph six of the order actually stated that a subpoena was required if Lucas was not an employee of State Farm, "presumably to confer jurisdiction." On July 3, 2019, at the hearing on the motion for sanctions, the court rejected this argument:

> "I have to agree with plaintiff that the order and the other arguments were clear [in] that paragraph 6 of my order as to say that the insurer may have knowledge of these two expert witnesses and their other cases, and so the insurer shall give that information as well.
>
> Certainly, they are a nonparty, but all of the law on Rule 216 and Rule 201, et seq, talk [*sic*] about the knowledge of the attorneys, the insurers, and the client. So that was the basis of the order.
>
> ***
>
> I don't think that there is a reasonable argument for not following that; and so therefore, I find that there is a reason for sanctions."

At the July 17, 2019 hearing, the court further emphasized defendant's lack of effort to comply with its order:

> "The clear order might not have been to defendant's liking, but it was not ambiguous and it should have been complied with or even attempted to be complied with."

Thus, any potential ambiguity in the court's order was clarified, and the court gave defendant additional time to cure her discovery violations. Defendant did not do so.

¶ 30    We determine that the court correctly applied existing case law, which holds that a party has reasonable control over the documents possessed by her insurer. See *Szczeblewski*, 342 Ill.

App. 3d at 349; see also *Oelze*, 401 Ill. App. 3d at 126. Contrary to Lucas's argument, the *Szczeblewski* court did not express an intent to confine its decision to requests to admit under Rule 216. Rather, the court based its reasoning on the then-existing interpretation of written interrogatories pursuant to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007):

> "In deciding a party's duty under Rule 216, we are guided by how Supreme Court Rule 213 [citation] has been construed. Rule 213 has been interpreted to require a party to answer fully and in good faith to the extent of his actual knowledge and the information available to him or his attorney." (Internal quotation marks omitted.) *Szczeblewski*, 342 Ill. App. 3d at 349.

The court's discovery order properly directed defendant to produce information, and she had a good-faith obligation to make a reasonable effort to secure that production. By Lucas's own admission, neither defendant nor Lucas made any such effort to comply with the order. Because the discovery order was not, contrary to what Lucas contends, "null and void," Lucas's argument that the sanctions order was also null and void necessarily fails. The court entered a proper discovery order, and the record is clear that defendant failed to comply.

¶ 31                          B. Sufficiency of Discovery Production

¶ 32    Lucas next argues that defendant produced "significant and substantial" discovery as to any potential bias of Goldberg and Musacchio and that the court abused its discretion by granting the motions to compel in its discovery order. Lucas further asserts that the court's discovery order resulted in sanctions against defendant in the July 17, 2019, sanctions order "for not producing documents not within her control."

¶ 33    In addressing Lucas's first issue, which raised questions of personal jurisdiction and the construction of the trial court's order, we applied *de novo* review. On this issue, where Lucas challenges the scope of the discovery order rather than its legality, we apply the abuse-of-discretion standard. *Norskog*, 197 Ill. 2d at 70. An abuse of discretion occurs when no reasonable person would accept the view adopted by the trial court. *National Tractor Parts Inc. v. Caterpillar Logistics Inc.*, 2020 IL App (2d) 181056, ¶ 69.

¶ 34    Discovery is intended to be a cooperative undertaking by counsel and the parties, conducted largely without intervention of the court, for the purposes of ascertaining the merits of the case, which in turn promotes a fair settlement or a fair trial. *Custer v. Cerro Flow Products, Inc.*, 2019 IL App (5th) 190285, ¶ 32. When disagreements arise, the trial court is authorized to enter discovery orders after considering numerous factors, such as the quantity of the requested information, the resources of the parties, and the importance of the discovery. *Custer*, 2019 IL App (5th) 190285, ¶ 32. Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) addresses the consequences of refusal to comply with discovery orders and provides for a variety of sanctions, including awarding reasonable attorney fees and costs.

¶ 35    Lucas acknowledges that plaintiffs are entitled during discovery to information that will allow for a reasonable cross-examination as to potential biases of expert witnesses, but it notes that cross-examination is not a "free for all." *Pontiac National Bank v. Vales*, 2013 IL App (4th) 111088, ¶ 17.

¶ 36    Our supreme court responded to the rising prevalence of expert testimony in modern-day litigation, and the difficulty of cross-examination by an attorney not schooled in the minutiae of the specialized subject matter of the expert witness, by expanding the permissible bounds

of cross-examination of expert witnesses. *Pontiac*, 2013 IL App (4th) 111088, ¶ 17. Opposing parties may cross-examine an expert witness about the amount and percentage of his or her income generated as an expert witness, the frequency with which he or she testifies, and the frequency with which he or she testifies for a particular side, which is designed to expose any potential bias, partisanship, or financial interest that might taint the expert witness's opinions. *Pontiac*, 2013 IL App (4th) 111088, ¶ 17. Still, while cross-examination is permissible to show bias, partisanship, or financial interest, there is a point at which such inquiries trample on the legitimate bounds of cross-examination and unduly harass or unnecessarily invade the privacy of the witness. *Pontiac*, 2013 IL App (4th) 111088, ¶ 19. Trial courts must use their discretion to oversee the process and ensure that it is fair to both sides. See *Pontiac*, 2013 IL App (4th) 111088, ¶ 18.

¶ 37     Here, the discovery dispute arose when defendant and Lucas produced limited information about Goldberg and Musacchio to Lucas's historical retention of those experts, making no effort to produce records regarding the experts' other work on behalf of State Farm. Plaintiffs attempted to glean this information from Goldberg and Musacchio during their deposition testimony, but they were either unwilling or unable to provide the specificity sought by plaintiffs. Plaintiffs immediately tendered supplemental interrogatories regarding Goldberg's and Musacchio's consulting on behalf of State Farm where Lucas was not the outside counsel. Plaintiffs argued that the experts' work on behalf of Lucas might be only a small slice of their work for State Farm and that plaintiffs were entitled to a complete picture to mount an effective cross-examination.

¶ 38     Before rendering its decision, the court articulated that it considered myriad factors. The court disallowed significant portions of plaintiffs' requests, such as transcripts of prior testimony, on the bases that these requests were irrelevant, overly broad, and unduly burdensome. The court explained: "I don't want to expand this into several mini cases where the witness is defending how he came to his opinion in that other case and how it's different from this case." The court did require, however, that defendant produce information about cases worked on and compensation received by Goldberg and Musacchio on behalf of State Farm during the four-year period prior to trial. Specifically, the court ordered that defendant respond with a list of cases, case numbers and counties, the law firms hired, and the amount of compensation paid in those cases, separate from Lucas's retention of these experts. The court clearly balanced plaintiffs' right to a robust cross-examination with the interests of fairness and judicial economy, which is exactly what we expect of a trial court in exercising its discretion.

¶ 39     Furthermore, the court's order directing defendant to produce additional discovery regarding Goldberg and Musacchio was consistent with the long-standing notions articulated in *Sanchez v. Black Brothers Co.*, 98 Ill. App. 3d 264, 271 (1981):

> "[T]he expert witness is usually a hired partisan. Moreover, it is unlikely that he could be successfully prosecuted for perjury on the basis of his opinion testimony. Thus, while the expert's opinion has the sanction of an oath, it lacks the substantial safeguard of truth that may be applied to the testimony of other witnesses. For these reasons, counsel must be given the widest possible latitude during cross-examination to demonstrate any interest, bias or motive of the expert witness to testify."

Accordingly, we determine that the court did not abuse its discretion in its discovery order by granting the motions to compel and ordering defendant to provide amended answers to the

supplemental interrogatories. Contrary to Lucas's contention that defendant was sanctioned for failing to produce documents not within her control, the court sanctioned defendant in its July 17, 2019, order for failing to make a good-faith effort to secure the answers.

¶ 40                                              C. Contempt Order

¶ 41     Lucas argues that it sought a friendly contempt order against itself to obtain review of the discovery order and that the contempt order should be vacated because Lucas did not willfully disregard the orders of the court.

¶ 42     "[W]hen an attorney's noncompliance with a discovery order is based on a good faith effort to secure an interpretation of an issue to serve his or her client and the court, a civil contempt finding should not stand." *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 124. It is clear from the record that defendant and Lucas disagreed with the discovery order from the outset. Defendant did not feel that she had an obligation to seek information from her insurer. It was defendant's and Lucas's failure to make any effort to comply with that order that ultimately led to the order of contempt. Lucas is not required to be right in its legal conclusions; it must show only that it made a good-faith effort to secure an interpretation of the order to the benefit of its client and the trial court. Lucas specifically asked the court to find it in friendly contempt for the stated purpose of appealing the court's sanction and discovery orders. The court indicated that it was entering the contempt order at Lucas's request so that Lucas could appeal. Plaintiffs ask that we affirm the contempt order, arguing that Lucas did not comply with the court's orders and that it "colluded" with State Farm to withhold information. These arguments directly address the merits of plaintiffs' motions for sanctions, but they do not address the court's intent in entering the contempt order. Under these circumstances, where Lucas sought the friendly contempt order in good faith as a procedural mechanism to initiate the appeal of the discovery and sanctions orders, we exercise our discretion to vacate the contempt finding and the associated $25-per-day fine.

¶ 43     Lastly, plaintiffs ask this court to impose sanctions on Lucas under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), which allows us to impose appropriate sanctions upon a party or a party's attorney if

> "it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose."

Plaintiffs assert that there is no good-faith basis for this appeal and that its "obvious" purpose was to cause palpable "unnecessary delay" and to drive up plaintiffs' costs. As discussed above, we believe that Lucas misinterpreted the trial court's orders and the relevant case law, but Lucas made cogent legal arguments. We find nothing in the record that supports plaintiffs' contentions of malicious intent. Accordingly, we determine that Lucas had a good-faith purpose for bringing this appeal, which was to secure an interpretation of the discovery and sanction orders. Therefore, we decline to impose Rule 375(b) sanctions.

¶ 44                                              III. CONCLUSION

¶ 45     For the foregoing reasons, we affirm the February 25, 2019, discovery order and the July 17, 2019, sanctions order. We vacate the August 16, 2019, contempt order and remand the

cause for further proceedings.

¶ 46        Affirmed in part and vacated in part.

¶ 47        Cause remanded.